```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF HAWAII

 3
      UNITED STATES OF AMERICA,    )      CRIMINAL NO. 19-00099-DKW
 4                                 )
                 Plaintiff,        )      Honolulu, Hawaii
 5                                 )
            vs.                    )      March 9, 2022
 6                                 )
      KAULANA FREITAS,             )      CHANGE OF PLEA HEARING
 7                                 )
                 Defendant.        )
 8    _____ )

 9
                       TRANSCRIPT OF PROCEEDINGS
10           BEFORE THE HONORABLE DERRICK K. WATSON,
             CHIEF UNITED STATES DISTRICT COURT JUDGE
11

12    APPEARANCES:

13

14    For the Plaintiff:          MARK INCIONG, ESQ.
                                   Office of the United States Attorney
15                                 PJKK Federal Building
                                   300 Ala Moana Boulevard, Suite 6100
16                                 Honolulu, Hawaii  96850

17    For the Defendant:          MARC JEFFREY VICTOR, ESQ.
                                   The Attorneys for Freedom Law Firm
18                                 1003 Bishop Street, Suite 1260
                                   Honolulu, HI 96813
19

20

21    Official Court Reporter:    Gloria T. Bediamol, RPR RMR CRR FCRR
                                   United States District Court
22                                 300 Ala Moana Boulevard
                                   Honolulu, Hawaii 96850
23

24
        Proceedings recorded by machine shorthand, transcript produced
25    with computer-aided transcription (CAT).
```

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | March 9, 2022                                    1:02 p.m.    |
| 01:02PM | 2  | THE CLERK:  Criminal Number 19-00099-DKW-KJM, United         |
| 01:02PM | 3  | States of America versus Defendant (03) Kaulana Feitas.      |
| 01:02PM | 4  | This case has been called for a change of plea               |
| 01:03PM | 5  | hearing.                                                     |
| 01:03PM | 6  | Counsel, please make your appearances for the record.        |
| 01:03PM | 7  | MR. INCIONG:  Good afternoon, Your Honor.  Mark              |
| 01:03PM | 8  | Inciong for the United States.                               |
| 01:03PM | 9  | THE COURT:  Mr. Inciong, good afternoon.                     |
| 01:03PM | 10 | MR. VICTOR:  Good afternoon and happy Wednesday,             |
| 01:03PM | 11 | Judge.  Marc Victor on behalf of Mr. Freitas who is present in |
| 01:03PM | 12 | court, out of custody.                                       |
| 01:03PM | 13 | THE COURT:  All right.  Mr. Freitas and Mr. Victor,          |
| 01:03PM | 14 | I'm not used to seeing you live and in the flesh.            |
| 01:03PM | 15 | MR. VICTOR:  Judge, I'm looking forward to the day I         |
| 01:03PM | 16 | can come in without at mask.                                 |
| 01:03PM | 17 | THE COURT:  Likewise.  Good afternoon to both of you         |
| 01:03PM | 18 | as well.                                                     |
| 01:03PM | 19 | We are here this afternoon because the defendant,           |
| 01:03PM | 20 | Mr. Freitas, as I understand it wishes to plead guilty to both |
| 01:03PM | 21 | Count 1 and 13 of the July 2021 second superseding indictment, |
| 01:03PM | 22 | that's pursuant to a plea agreement with the United States.  |
| 01:03PM | 23 | Mr. Freitas, before accepting your plea, there are a         |
| 01:03PM | 24 | few questions that I need to ask you this afternoon; those   |
| 01:03PM | 25 | questions are designed to ensure that your decisions are both |

01:04PM   1    knowing and voluntary.  If at any time I ask you any question
01:04PM   2    at all during the course of this afternoon's proceedings that's
01:04PM   3    unclear or ambiguous, you can rest assure, first of all, I do
01:04PM   4    not intend to do that; but second of all, if I do, and you feel
01:04PM   5    that anything I ask you is unclear, I will do my very best to
01:04PM   6    ask a better question, but it's incumbent on you in that
01:04PM   7    instance to let me know.  Okay?
01:04PM   8              THE DEFENDANT:  Okay.
01:04PM   9              THE COURT:  So if you need classification, I'll do my
01:04PM   10   best to provide or give you an opportunity to speak with
01:04PM   11   Mr. Victor to do the same.  Okay?
01:04PM   12             THE DEFENDANT:  Thank you.
01:04PM   13             THE COURT:  All right.  If you would please swear the
01:04PM   14   defendant in.
01:04PM   15             THE CLERK:  Please raise your right hand.
01:04PM   16             (The defendant was sworn to answer truthfully.)
01:04PM   17             THE COURT:  Please understand, sir, that you have now
01:04PM   18   taken an oath to answer my questions this afternoon truthfully,
01:04PM   19   and if you do anything other than that, you could be subjecting
01:04PM   20   yourself to additional charges.  Do you understand that?
01:05PM   21             THE DEFENDANT:  I understand.
01:05PM   22             THE COURT:  Please state your name.
01:05PM   23             THE DEFENDANT:  Kaulana Freitas.
01:05PM   24             THE COURT:  How old are you?
01:05PM   25             THE DEFENDANT:  33.

01:05PM   1             THE COURT:  What's the highest level of education that
01:05PM   2   you have achieved?
01:05PM   3             THE DEFENDANT:  Eleventh grade.
01:05PM   4             THE COURT:  Your most recent employer is whom?
01:05PM   5             THE DEFENDANT:  Kama'aina Termite and Pest Control.
01:05PM   6             THE COURT:  What did you do for Kama'aina?
01:05PM   7             THE DEFENDANT:  I was a salesman.
01:05PM   8             THE COURT:  You understand, speak, and I assume write
01:05PM   9   English all just fine; is that fair?
01:05PM   10             THE DEFENDANT:  Yes.
01:05PM   11             THE COURT:  Have you taken any type of drugs, legal or
01:05PM   12   illegal, within the past 48 hours?
01:05PM   13             THE DEFENDANT:  No, sir.
01:05PM   14             THE COURT:  Have you consumed any alcohol within the
01:05PM   15   past 24 hours?
01:05PM   16             THE DEFENDANT:  No, sir.
01:05PM   17             THE COURT:  Is it fair to say then that you are sober
01:05PM   18   and thinking clearly this afternoon?
01:05PM   19             THE DEFENDANT:  Yes.
01:05PM   20             THE COURT:  What is your understanding of the purpose
01:05PM   21   of this afternoon's hearing?
01:05PM   22             THE DEFENDANT:  To plead guilty.
01:05PM   23             THE COURT:  And have you had enough time, sir, to
01:05PM   24   discuss that decision whether or not to plead guilty as well as
01:05PM   25   this case generally with Mr. Victor?

| | | |
|---|---|---|
| 01:05PM | 1 | THE DEFENDANT:  Yes. |
| 01:06PM | 2 | THE COURT:  And are you satisfied with his |
| 01:06PM | 3 | representation of you thus far in this case? |
| 01:06PM | 4 | THE DEFENDANT:  Yes, sir. |
| 01:06PM | 5 | THE COURT:  Mr. Victor, do you have any reason to |
| 01:06PM | 6 | doubt your client's capacity or competence to enter a knowing |
| 01:06PM | 7 | and informed plea this afternoon? |
| 01:06PM | 8 | MR. VICTOR:  I don't, Judge. |
| 01:06PM | 9 | THE COURT:  Counts 1 and 13 are two of the many counts |
| 01:06PM | 10 | set forth in the second superseding indictment; I'm going to |
| 01:06PM | 11 | summarize those two counts for you. |
| 01:06PM | 12 | First of all, Count 1 charges you and others with |
| 01:06PM | 13 | conspiring to violate the racketeering laws of the United |
| 01:06PM | 14 | States in violation of Section 1962(c) of Title 18, that's of |
| 01:06PM | 15 | the United States Code. |
| 01:06PM | 16 | Count 13 charges you with using and releasing a |
| 01:06PM | 17 | chemical called chloropicrin for other than lawful or peaceful |
| 01:06PM | 18 | purposes in a Honolulu nightclub on March 4, 2017.  If true, |
| 01:06PM | 19 | that would violate both Section 229 and 229(a) of Title 18 of |
| 01:07PM | 20 | the United States Code.  Have you discussed these charges and |
| 01:07PM | 21 | allegations with counsel? |
| 01:07PM | 22 | THE DEFENDANT:  Yes. |
| 01:07PM | 23 | THE COURT:  And are you confident, based on your own |
| 01:07PM | 24 | review and discussions with counsel, that you understand the |
| 01:07PM | 25 | nature of the charges brought against you? |

01:07PM   1                THE DEFENDANT:  Yes, sir.

01:07PM   2                THE COURT:  Do you have any questions at all regarding

01:07PM   3    these charges?

01:07PM   4                THE DEFENDANT:  No, sir.

01:07PM   5                THE COURT:  Has anyone, Mr. Freitas, threatened,

01:07PM   6    forced, or coerced you into pleading guilty this afternoon?

01:07PM   7                THE DEFENDANT:  No, sir.

01:07PM   8                THE COURT:  To your knowledge, has anyone threatened,

01:07PM   9    forced, or coerced anyone close to you, meaning a close friend

01:07PM   10   or relative, in order to get you to plead guilty?

01:07PM   11               THE DEFENDANT:  No, sir.

01:07PM   12               THE COURT:  Other than the promises that the

01:07PM   13   government has made in its written plea agreement with you,

01:07PM   14   which we will get into in just a minute in some detail, has

01:07PM   15   anyone else made any promises or assurances to you in order to

01:07PM   16   get you to plead guilty?

01:07PM   17               THE DEFENDANT:  No, sir.

01:07PM   18               THE COURT:  Are you pleading guilty this afternoon

01:07PM   19   because you are guilty of the conduct alleged in Counts 1 and

01:07PM   20   13?

01:07PM   21               THE DEFENDANT:  Yes.

01:07PM   22               THE COURT:  Mr. Inciong, would you then please

01:07PM   23   describe the potential penalties that Mr. Freitas faces for

01:07PM   24   pleading guilty to each of Counts 1 and 13?

01:08PM   25               MR. INCIONG:  Yes, Your Honor.  In regards to Count 1,

01:08PM   1    the maximum penalties are as follows:

01:08PM   2          First, there is a term of imprisonment of not more

01:08PM   3    than 20 years; a fine of up to $250,000; there is a term of

01:08PM   4    supervised release that's required of up to three years as

01:08PM   5    well.

01:08PM   6          In regard to Count 13, there is a term of imprisonment

01:08PM   7    of any years; a fine of up to $250,000; plus a term of

01:08PM   8    supervised release of up to five years.

01:08PM   9          For both counts, there is a mandatory $100 special

01:08PM   10   assessment, and there is a general forfeiture provision that's

01:08PM   11   part of the plea agreement as alleged in the indictment.  Your

01:08PM   12   Honor, at this time there are no specific forfeiture

01:08PM   13   allegations.

01:08PM   14         THE COURT:  All right.  And that's paragraph 7D, as in

01:08PM   15   David, of the plea agreement; is that correct?

01:08PM   16         MR. INCIONG:  That's correct.

01:08PM   17         THE COURT:  Mr. Victor, do you agree, sir, with the

01:08PM   18   potential penalties that your client faces for pleading guilty

01:08PM   19   to Counts 1 and 13 as just described by AUSA Inciong?

01:08PM   20         MR. VICTOR:  I do, Judge.

01:08PM   21         THE COURT:  Mr. Freitas, do you, sir, understand the

01:09PM   22   potential penalties that you face for pleading guilty to each

01:09PM   23   of these two counts?

01:09PM   24         THE DEFENDANT:  Yes, correct.

01:09PM   25         THE COURT:  You've entered into a written plea

| | | |
|---|---|---|
| 01:09PM | 1 | agreement with the government; is that correct? |
| 01:09PM | 2 | THE DEFENDANT:  Yes. |
| 01:09PM | 3 | THE COURT:  Have you read that document, the plea |
| 01:09PM | 4 | agreement, in full? |
| 01:09PM | 5 | THE DEFENDANT:  Yes. |
| 01:09PM | 6 | THE COURT:  And have you had a chance to discuss it |
| 01:09PM | 7 | with counsel? |
| 01:09PM | 8 | THE DEFENDANT:  Yes. |
| 01:09PM | 9 | THE COURT:  And based on your own review and |
| 01:09PM | 10 | discussions with counsel, are you confident that you understand |
| 01:09PM | 11 | each of the terms of your plea agreement with the United |
| 01:09PM | 12 | States? |
| 01:09PM | 13 | THE DEFENDANT:  Yes, sir. |
| 01:09PM | 14 | THE COURT:  Do you have questions regarding any of the |
| 01:09PM | 15 | provisions of the agreement? |
| 01:09PM | 16 | THE DEFENDANT:  No questions. |
| 01:09PM | 17 | THE COURT:  Mr. Victor, are you satisfied that |
| 01:09PM | 18 | Mr. Freitas understands the terms of his plea agreement with |
| 01:09PM | 19 | the United States? |
| 01:09PM | 20 | MR. VICTOR:  I am, Judge. |
| 01:09PM | 21 | THE COURT:  I have what appears to be the original of |
| 01:09PM | 22 | that agreement in front of me, it's a 24-paged document. |
| 01:09PM | 23 | Mr. Freitas, do you recall signing the final page, |
| 01:09PM | 24 | page 24 of the document, dated March 9th of 2022? |
| 01:09PM | 25 | THE DEFENDANT:  Yes. |

01:09PM  1          THE COURT:  Does the written plea agreement,

01:09PM  2  Mr. Freitas, reflect the entire agreement that you have with

01:09PM  3  the United States?

01:09PM  4          THE DEFENDANT:  I'm sorry, can you say that again?

01:10PM  5          THE COURT:  Sure.  Does the written plea agreement

01:10PM  6  that you signed reflect the entire agreement that you have with

01:10PM  7  the United States?

01:10PM  8          MR. VICTOR:  Could we have a moment, Judge?

01:10PM  9          THE COURT:  Yes.

01:10PM  10         MR. VICTOR:  Judge, two things.  You could reask him

01:10PM  11  that question and I expect you'll get a satisfactory answer;

01:10PM  12  but secondarily, I think when the Court earlier asked him about

01:10PM  13  where he works most recently, I think he misunderstood the

01:10PM  14  nature of that question.  He gave you his employment, his last

01:10PM  15  employment.  He has different employment now, so I want to make

01:10PM  16  sure we have an opportunity to correct the record on that.

01:10PM  17         THE COURT:  All right.  So let's go back and take the

01:10PM  18  second issue first.  When I asked you earlier who is your most

01:10PM  19  recent employer, you mentioned Kama'aina Termite and Pest

01:11PM  20  Control, is that not a correct answer?

01:11PM  21         THE DEFENDANT:  No, it's going to be B&K Construction.

01:11PM  22         THE COURT:  What do you do for B&K Construction?

01:11PM  23         THE DEFENDANT:  A journeyman finisher.

01:11PM  24         THE COURT:  Is that a job that you hold currently?

01:11PM  25         THE DEFENDANT:  Yes, I've been carrying it since 2009.

01:11PM    1    It's a Local 1 union.

01:11PM    2         THE COURT:  Thank you for correcting the record.  The

01:11PM    3    current issue, the first one that Mr. Victor just brought up in

01:11PM    4    his comments, asked you whether or not the plea agreement with

01:11PM    5    the United States, the written copy of the plea agreement that

01:11PM    6    I have in front of me, does that reflect the entire agreement

01:11PM    7    that you have with the United States?

01:11PM    8         THE DEFENDANT:  Yes.

01:11PM    9         THE COURT:  Another way of asking the question maybe

01:11PM   10    would be, did the government make any verbal or oral promises

01:11PM   11    to you that they did not put into the written plea agreement?

01:11PM   12         THE DEFENDANT:  Yes.

01:12PM   13         THE COURT:  What's that?

01:12PM   14         THE DEFENDANT:  No, I'm sorry.

01:12PM   15         THE COURT:  Your answer is no?

01:12PM   16         THE DEFENDANT:  No.

01:12PM   17         THE COURT:  Do you understand, sir, that the Court is

01:12PM   18    not required to accept the plea agreement that you signed with

01:12PM   19    the United States, and it is possible for me to reject it?  I

01:12PM   20    won't make that decision however until after a presentence

01:12PM   21    investigation and report have both been completed.

01:12PM   22         THE DEFENDANT:  I understand.

01:12PM   23         THE COURT:  Do you also understand that any

01:12PM   24    stipulations in the written plea agreement are agreements

01:12PM   25    between you and the Department of Justice and that the Court is

01:12PM   1   specifically not bound by those stipulations?

01:12PM   2          THE DEFENDANT:  Yes, sir.

01:12PM   3          THE COURT:  Mr. Inciong, would you then please

01:12PM   4   describe the essential terms of the government's plea agreement

01:12PM   5   with Mr. Freitas, including any appellate waiver provisions

01:12PM   6   please?

01:12PM   7          MR. INCIONG:  Yes, Your Honor.  Pursuant to the plea

01:12PM   8   agreement, the defendant, Mr. Freitas, will enter guilty pleas

01:12PM   9   voluntarily to Counts 1 and 13 of the second superseding

01:12PM  10   indictment, which charges him with conspiring to violate the

01:12PM  11   racketeering laws of the United States, which is the charge in

01:12PM  12   Count 1, and using a chemical weapon in violation of Title 18,

01:13PM  13   United States Code, Sections 229(a)(1) and 229(a)(2), which is

01:13PM  14   Count 13. In return, the government agrees to dismiss Counts 12

01:13PM  15   and 16 of the second superseding indictment as to the defendant

01:13PM  16   after sentencing.

01:13PM  17          The defendant agrees that this memorandum of plea

01:13PM  18   agreement will be filed and become part of the record in this

01:13PM  19   case.  The defendant is entering these pleas because he is in

01:13PM  20   fact guilty of conspiring to violate the racketeering laws of

01:13PM  21   the United States, namely Title 18, United States Code, Section

01:13PM  22   1962(d), and using a chemical weapon in violation of Title 18,

01:13PM  23   United States Code, Sections 229(a)(1) and 229(a)(2), as

01:13PM  24   charged in Counts 1 and 13 of the second superseding

01:13PM  25   indictment.  Mr. Freitas further agrees that these pleas are

01:13PM  1   voluntary and not the result of any force or threat.

01:13PM  2          The defendant understands the penalties which apply to

01:14PM  3   each of these counts as was recited earlier.  There are a

01:14PM  4   number of factual stipulations that the parties have entered

01:14PM  5   into, Your Honor; those begin on page 5 on paragraph 8 of the

01:14PM  6   plea agreement continuing through page 11.

01:14PM  7          Pursuant to Rule 32.1(a) of the local rules of the

01:14PM  8   United States District Court for the District of Hawaii, the

01:14PM  9   parties agree that the charges to which the defendant is

01:14PM  10  pleading guilty adequately reflect the seriousness of the

01:14PM  11  actual offense behavior and that accepting this plea agreement

01:14PM  12  would not undermine any statutory purposes of sentencing.

01:14PM  13         There are a number of sentencing stipulations that the

01:14PM  14  parties have entered into.  First, as of the date of this

01:14PM  15  agreement, it is expected that the defendant will enter a plea

01:14PM  16  of guilty -- actually, pleas of guilty prior to the

01:14PM  17  commencement of trial, that he will truthfully admit his

01:14PM  18  involvement in the offenses and related conduct and will not

01:14PM  19  engage in any conduct that is inconsistent with such acceptance

01:15PM  20  of responsibility.  If all of these events occur, and the

01:15PM  21  defendant's acceptance of responsibility continues to the date

01:15PM  22  of sentencing, a downward adjustment of two levels for

01:15PM  23  acceptance of responsibility will be appropriate, pursuant to

01:15PM  24  Guideline Section 3E1.1, subparagraph A, and Application Note

01:15PM  25  3.

01:15PM  1          The parties also agree and stipulate that pursuant to

01:15PM  2    Guideline 2M, as in Mary, 6.1, subparagraph A, subparagraph 2,

01:15PM  3    the applicable base offense level in this case is 28.  The

01:15PM  4    parties further stipulate that a plus two level increase

01:15PM  5    applies as prescribed in Guideline Section 2M6.1, subparagraph

01:15PM  6    B, subparagraph 1, subparagraph ii, because chloropicrin is a

01:15PM  7    listed toxic chemical.  The parties also agree that an upward

01:15PM  8    adjustment pursuant to Guideline Section 2M6.1, subparagraph B,

01:16PM  9    subparagraph 3, subparagraph i, does not apply to the facts of

01:16PM  10    this case, as there was no, quote, substantial disruption of

01:16PM  11    business functions or services.  However, pursuant to paragraph

01:16PM  12    7(e) of this plea agreement, the defendant agrees to pay

01:16PM  13    restitution for any financial losses demonstrated to have been

01:16PM  14    incurred by the "District" nightclub on March 4, 2017.

01:16PM  15          The U.S. Attorney agrees that the defendant's

01:16PM  16    agreement herein to enter into a guilty plea constitutes notice

01:16PM  17    of intent to plead guilty in a timely manner, so as to permit

01:16PM  18    the government to avoid preparing for trial as to the

01:16PM  19    defendant.  Accordingly, the U.S. Attorney anticipates moving

01:16PM  20    in the government's sentencing statement for a one-level

01:16PM  21    reduction in sentencing offense level pursuant to Guideline

01:16PM  22    Section 3E1.1, subparagraph B, subparagraph 2, if the defendant

01:16PM  23    is otherwise eligible. The defendant understands however that

01:17PM  24    notwithstanding these present intentions, and still within the

01:17PM  25    parameters of this plea agreement, the prosecution reserves the

01:17PM    1    right to argue to the contrary in the event that new
01:17PM    2    information is received relating to those issues and/or to call
01:17PM    3    and examine witnesses on those issues in the event that either
01:17PM    4    U.S. Probation finds to the contrary of the prosecution's
01:17PM    5    intentions or that this Court requests evidence.
01:17PM    6           The parties also agree that notwithstanding the
01:17PM    7    parties' agreement herein, the Court is not bound by any
01:17PM    8    stipulation entered into by the parties.  The Court will be,
01:17PM    9    with the aid of the presentence report, the final determiner of
01:17PM   10    any facts relevant to sentencing.  The parties also understand
01:17PM   11    that the Court's rejection of any stipulation between the
01:17PM   12    parties does not constitute a refusal to accept this plea
01:17PM   13    agreement since the Court is expressly not bound by the
01:17PM   14    parties' stipulations.
01:17PM   15           Your Honor, the parties represent that as of today's
01:17PM   16    date there are no material facts in dispute.
01:18PM   17           In regard to appeal and collateral review, the
01:18PM   18    defendant is aware that typically he would have the right to
01:18PM   19    appeal his conviction and the sentence imposed.  However,
01:18PM   20    pursuant to this plea agreement, the defendant is knowingly and
01:18PM   21    voluntarily waiving his right to appeal as well as his right to
01:18PM   22    collaterally attack his conviction and sentence except in two
01:18PM   23    limited circumstances.
01:18PM   24           First, if the Court imposes a sentence greater than
01:18PM   25    specified in the guideline range determined by the Court to be

01:18PM   1   applicable to the defendant, Mr. Freitas will retain the right

01:18PM   2   to appeal the portion of the sentence greater than specified in

01:18PM   3   the guideline range and the manner in which that portion was

01:18PM   4   determined, as well as to challenge that portion of his

01:18PM   5   sentence in a collateral attack.  He also retains the right to

01:18PM   6   pursue any claim of ineffective assistance of counsel that he

01:18PM   7   believes may be present.

01:18PM   8        The defendant understands that irregardless the

01:18PM   9   prosecution will retain its right to appeal the sentence in the

01:19PM  10   manner it was determined on any grounds.

01:19PM  11        There is a financial disclosure requirement as part of

01:19PM  12   the plea agreement, Your Honor.  In connection with the

01:19PM  13   collection of restitution or other financial obligations that

01:19PM  14   may be imposed upon him, the defendant agrees to fully disclose

01:19PM  15   all assets in which he has any interest over or which he

01:19PM  16   exercises control, indirectly or directly, including any assets

01:19PM  17   held by a spouse, nominee, or third party.  The defendant

01:19PM  18   understands that the U.S. Probation Office will require him to

01:19PM  19   complete a comprehensive financial statement that will be part

01:19PM  20   of the presentence investigation.  To avoid the requirement of

01:19PM  21   doing that twice basically, the defendant agrees to truthfully

01:19PM  22   complete a financial statement to the U.S. Attorney's Office

01:19PM  23   who will then provide that to the U.S. Probation Office. The

01:19PM  24   defendant agrees to provide written updates to both U.S.

01:19PM  25   Probation Office and U.S. Attorney's Office regarding any

01:20PM   1   material changes in circumstances which occur prior to

01:20PM   2   sentencing.  The defendant's failure to timely and accurately

01:20PM   3   complete and sign the financial statements and any written

01:20PM   4   update may, in addition to any other penalty or remedy,

01:20PM   5   constitute failure to accept responsibility by the defendant

01:20PM   6   under the Guideline Section 3E1.1.

01:20PM   7        Accordingly, the defendant has expressly authorized

01:20PM   8   the U.S. Attorney's Office to obtain his credit report and

01:20PM   9   authorize the U.S. Attorney's Office to inspect and copy all

01:20PM  10   financial documents and information held by U.S. Probation.

01:20PM  11        Finally, prior to sentencing, the defendant agrees to

01:20PM  12   notify the Financial Litigation Unit of the U.S. Attorney's

01:20PM  13   Office before making any transfer of interest in property with

01:20PM  14   a value exceeding $1,000, whether owned directly or indirectly,

01:20PM  15   individually or jointly, by the defendant and including any

01:20PM  16   interest held or owned under any name, including trusts,

01:20PM  17   partnerships, and corporations.

01:20PM  18        In regard to imposition of sentence, the defendant

01:21PM  19   understands that the District Court in imposing his sentence

01:21PM  20   will consider the provisions of the Sentencing Guidelines.

01:21PM  21   However, the defendant understands there is no promise or

01:21PM  22   guarantee as to the applicability or nonapplicability of those

01:21PM  23   guidelines, notwithstanding any representations or predictions

01:21PM  24   from any source.

01:21PM  25        The defendant also understands that this plea

01:21PM  1   agreement will not be accepted or rejected by the Court until

01:21PM  2   it has had an opportunity to review the presentence report. The

01:21PM  3   defendant also understands that the Court will not accept the

01:21PM  4   plea agreement, unless the Court determines that the remaining

01:21PM  5   charges adequately reflect the seriousness of the actual

01:21PM  6   offense behavior and that accepting the plea agreement would

01:21PM  7   not undermine any statutory purposes of sentencing.

01:21PM  8        Pursuant to the terms of this plea agreement, the

01:21PM  9   defendant is waiving a number of important trial rights, both

01:21PM  10  constitutional and otherwise, including the right to have a

01:21PM  11  jury of his peers determine the elements of the counts against

01:21PM  12  him beyond a reasonable doubt.  Also included is the

01:22PM  13  defendant's right and privilege against self-incrimination so

01:22PM  14  that he can decline to testify and no inference of guilt could

01:22PM  15  be drawn from his refusal to testify.  Conversely, the

01:22PM  16  defendant would obviously have the right to testify as well.

01:22PM  17       Also, the defendant would have the right to have the

01:22PM  18  jury determine beyond a reasonable doubt the quantity and

01:22PM  19  weight of the controlled substances charged in the second

01:22PM  20  superseding indictment necessary to establish any statutory

01:22PM  21  mandatory minimum or increase statutory maximum penalty.  By

01:22PM  22  pleading guilty, Mr. Freitas understands he is waiving all of

01:22PM  23  these rights.

01:22PM  24       In regard to use of police statements, if after

01:22PM  25  signing this plea agreement the defendant decides not to plead

01:22PM  1   guilty as provided herein, or if he pleads guilty but

01:22PM  2   subsequently makes a motion before this Court to withdraw his

01:22PM  3   guilty plea and the Court would grant that motion, the

01:22PM  4   defendant agrees that any admission of guilt that he makes by

01:23PM  5   signing this agreement or that he makes while pleading guilty,

01:23PM  6   as set forth in this agreement, may be used against him in a

01:23PM  7   subsequent trial, if the defendant would later proceed to

01:23PM  8   trial.  The defendant knowingly, voluntarily and intelligently

01:23PM  9   waives any protections afforded by Rule 11(f) of the Federal

01:23PM  10  Rules of Criminal Procedure and Rule 410 of the Federal Rules

01:23PM  11  of Evidence regarding the use of statements made in this

01:23PM  12  agreement or during the course of pleading guilty when and if

01:23PM  13  the guilty plea is later withdrawn.

01:23PM  14          The only exception to this paragraph, Your Honor, is

01:23PM  15  where the defendant fully complies with his agreement but the

01:23PM  16  Court nonetheless rejects the plea agreement, under those

01:23PM  17  circumstances the United States may not use the statements of

01:23PM  18  the defendant for any purpose.

01:23PM  19          Mr. Freitas also understands that the prosecution will

01:23PM  20  apprise the Court and the U.S. Probation Office of the nature,

01:23PM  21  scope, and extent of the defendant's conduct regarding the

01:23PM  22  charges against him, any related matters, as well as any

01:23PM  23  mitigating or aggravating factors that are relevant to

01:24PM  24  sentencing.

01:24PM  25          There is a cooperation provision as well, as part of

01:24PM   1   this agreement, Your Honor, in which the defendant has agreed

01:24PM   2   he will fully cooperate with the United States, including

01:24PM   3   agreeing to testify truthfully at any and all trials, hearings,

01:24PM   4   or other proceedings in which the prosecution requests him to

01:24PM   5   testify, including but not limited to any grand jury

01:24PM   6   proceedings, trial proceedings involving codefendants and

01:24PM   7   others charged later in the investigation.  This also includes

01:24PM   8   sentencing and related civil proceeding.

01:24PM   9        This means the defendant has agreed he will be

01:24PM   10  available to speak with law enforcement officials and

01:24PM   11  representatives of the U.S. Attorney's Office at any time and

01:24PM   12  give truthful and complete answers at such meetings.

01:24PM   13       The defendant likewise agrees he will not assert any

01:24PM   14  privilege to refuse to testify at any grand jury, trial, or

01:24PM   15  other proceedings involving or related to the crimes charged in

01:24PM   16  the second superseding indictment or any subsequent charges

01:24PM   17  related to this investigation.

01:24PM   18       The defendant also agrees that his sentencing date may

01:25PM   19  be delayed based on the government's need for the defendant's

01:25PM   20  continued cooperation and agrees not to object to any

01:25PM   21  continuances.

01:25PM   22       Pursuant to Guideline Section 1B1.8, subparagraph A,

01:25PM   23  of the Sentencing Guidelines, the prosecution agrees that

01:25PM   24  self-incriminating information provided pursuant to this

01:25PM   25  agreement to cooperate will not be used in determining the

01:25PM   1   applicable guideline range, except as may be provided in this

01:25PM   2   agreement and under Section 1B1.8, subparagraph b of the

01:25PM   3   guidelines.

01:25PM   4          In the event the defendant does not breach any of the

01:25PM   5   terms of the agreement, but the Court nonetheless refuses to

01:25PM   6   accept the plea agreement after the defendant had made

01:25PM   7   statements to law enforcement authorities or representatives of

01:25PM   8   the U.S. Attorney's Office, the prosecution agrees not to use

01:25PM   9   said statements in its case in chief in the trial of the

01:25PM   10  defendant in this matter.  The defendant understands however

01:25PM   11  that this does not bar the use of information and evidence

01:25PM   12  derived from such statements or prohibit the use of the

01:26PM   13  statements by the prosecution in cross-examination or rebuttal.

01:26PM   14         Based on his cooperation, Mr. Freitas understands that

01:26PM   15  pursuant to Guideline 5K1.1 and Rule 35(b) of the Federal Rules

01:26PM   16  of Criminal Procedure, the prosecution may move the Court to

01:26PM   17  depart from the guidelines on the ground that the defendant has

01:26PM   18  provided substantial assistance.  And this would be in relation

01:26PM   19  to the investigation or prosecution of other persons who have

01:26PM   20  committed an offense.

01:26PM   21         The defendant understands however that the decision as

01:26PM   22  to whether to make such a request or motion lies entirely with

01:26PM   23  the prosecution and that this agreement does not require the

01:26PM   24  prosecution to make such a request or motion.

01:26PM   25         The defendant and his attorney acknowledge that, apart

01:26PM  1   from any written proffer agreements, if applicable, no threats,

01:26PM  2   promises, agreements or conditions have been entered into by

01:27PM  3   the parties, other than those set forth in this plea agreement,

01:27PM  4   to induce Mr. Freitas to plead guilty.  Apart from any written

01:27PM  5   proffer agreements, if applicable, this agreement supersedes

01:27PM  6   all prior promises, agreements or conditions between the

01:27PM  7   parties.

01:27PM  8        To become effective, this plea agreement must be

01:27PM  9   signed by all signatories, and that is reflected on page 24 of

01:27PM  10  the plea agreement, Your Honor.

01:27PM  11        Finally, should the Court refuse to accept this plea

01:27PM  12  agreement, it will become null and void and neither party would

01:27PM  13  be bound thereto.

01:27PM  14        Those are the terms of the plea agreement.

01:27PM  15        THE COURT:  Mr. Victor, do you agree the AUSA Inciong

01:27PM  16  has set forth and accurately done so the essential terms of

01:27PM  17  your client's plea agreement with the United States?

01:27PM  18        MR. VICTOR:  Yes, Judge.  I think that was the most

01:27PM  19  comprehensive summary of a plea agreement I've witnessed in my

01:27PM  20  entire career; so yes.

01:27PM  21        THE COURT:  All right.  Mr. Freitas, you would be

01:27PM  22  giving up by virtue of entering into this plea agreement with

01:27PM  23  the United States some important trial and trial related

01:27PM  24  rights.  I know you are familiar with what those rights consist

01:28PM  25  of because they are largely set forth at paragraphs 17 and 18

01:28PM   1   of your particular agreement, the same agreement that you said

01:28PM   2   you have read and discussed with counsel.  Nonetheless, I'm

01:28PM   3   going to go over those rights with you myself now, to be extra

01:28PM   4   sure you appreciate the nature of what you are giving up.

01:28PM   5           The first of which, sir, do you understand that under

01:28PM   6   the constitution and laws of the United States, you have the

01:28PM   7   right not to plead guilty and to proceed to a trial, including

01:28PM   8   a trial by jury, on the charges brought against you?

01:28PM   9           THE DEFENDANT:  Yes.

01:28PM   10          THE COURT:  Do you further understand that if you were

01:28PM   11   to proceed to trial, you would be presumed innocent, which

01:28PM   12   means that the government would have the burden of proving your

01:28PM   13   guilt to a jury beyond a reasonable doubt, and that at no time

01:28PM   14   would you have the burden of proving you are not guilty?

01:28PM   15          THE DEFENDANT:  I understand.

01:28PM   16          THE COURT:  Do you understand that in order to be

01:28PM   17   found guilty at any trial, a jury of 12 persons from this local

01:28PM   18   community would have to find your guilt not only beyond a

01:28PM   19   reasonable doubt, but they would have to do so unanimously?

01:28PM   20          THE DEFENDANT:  Yes.

01:29PM   21          THE COURT:  Do you understand that at all stages of

01:29PM   22   the prosecution, which includes trial, you have the right to

01:29PM   23   the assistance of counsel, as you do here this afternoon, and

01:29PM   24   if at any point in time you could not afford counsel, one would

01:29PM   25   be appointed for you by the Court at no cost to you?

01:29PM   1              THE DEFENDANT:  I understand.

01:29PM   2              THE COURT:  Do you understand that at any trial you

01:29PM   3    would have the right to see and to hear all of the government's

01:29PM   4    evidence and witnesses and to have those witnesses questioned

01:29PM   5    by your own attorney?

01:29PM   6              THE DEFENDANT:  Yes.

01:29PM   7              THE COURT:  Do you understand that at any trial you

01:29PM   8    could object to any of the evidence offered by the United

01:29PM   9    States and you could present evidence of your own in your case

01:29PM  10    in chief, including through witness testimony that is compelled

01:29PM  11    through the Court's subpoena power if that were necessary?

01:29PM  12              THE DEFENDANT:  Yes.

01:29PM  13              THE COURT:  Do you understand that at any trial you

01:29PM  14    would also have the right to testify on your own behalf, if you

01:29PM  15    chose to do that; but if you chose not to, no inference or

01:29PM  16    suggestion of your guilt could be drawn by the jury by the fact

01:29PM  17    that you chose not to testify?

01:29PM  18              THE DEFENDANT:  I understand.

01:30PM  19              THE COURT:  Do you understand, sir, that by entering a

01:30PM  20    plea of guilty here this afternoon, and if I were to accept

01:30PM  21    that plea, there will be no trial and you will have given up

01:30PM  22    each of these trial related rights that I've just mentioned?

01:30PM  23              THE DEFENDANT:  I understand.

01:30PM  24              THE COURT:  Do you also understand that in order to

01:30PM  25    proceed with your plea this afternoon you will also need to

01:30PM   1   give up your right not to incriminate yourself?  And the reason

01:30PM   2   for that is, I'm about to ask you a few questions about what

01:30PM   3   you did that makes you guilty of Counts 1 and 13, and those

01:30PM   4   questions will need to be answered.

01:30PM   5            THE DEFENDANT:  I understand.

01:30PM   6            THE COURT:  Do you have any questions, sir, regarding

01:30PM   7   any of these rights that I've just mentioned?

01:30PM   8            THE DEFENDANT:  No, sir.

01:30PM   9            THE COURT:  And knowing these rights, Mr. Freitas, is

01:30PM   10  it still your desire to proceed with your plea?

01:30PM   11           THE DEFENDANT:  Yes.

01:30PM   12           THE COURT:  You are United States citizen, correct?

01:30PM   13           THE DEFENDANT:  Correct.

01:30PM   14           THE COURT:  As a United States citizen, you should

01:30PM   15  understand that the charges brought against you and that you

01:30PM   16  are prepared to plead guilty to are considered felony offenses.

01:30PM   17  If your plea is accepted and you are adjudged guilty of these

01:30PM   18  offenses, that adjudication by the Court could derive you of

01:30PM   19  some value civil rights.  Those civil rights include the right

01:31PM   20  to vote, the right to hold public office, the right to sit on a

01:31PM   21  jury, as well as the right to possess or bear a firearm.  Do

01:31PM   22  you understand that?

01:31PM   23           THE DEFENDANT:  I understand.

01:31PM   24           THE COURT:  With regard to sentencing, United States

01:31PM   25  law establishes detailed Sentencing Guidelines that apply to

01:31PM  1    those who are convicted of -- which include those who plead

01:31PM  2    guilty to federal crimes.  The sentencing judge in this case,

01:31PM  3    is most likely going to be myself, the sentencing judge must

01:31PM  4    consider the Sentencing Guidelines.  Additionally, the

01:31PM  5    sentencing judge must consider the statutory sentencing factors

01:31PM  6    that are set forth at Title 18 of the United States Code,

01:31PM  7    Section 3553(a), what we sometimes shorthand refer to as the

01:31PM  8    3553(a) factors.  Although the sentencing judge must consider

01:31PM  9    the Sentencing Guidelines, those guidelines are what the name

01:31PM  10   might imply to you.  They are guidelines which means that they

01:31PM  11   are advisory on this Court only.  Do you understand that?

01:31PM  12            THE DEFENDANT:  I understand.

01:31PM  13            THE COURT:  Have you discussed with Mr. Victor how the

01:31PM  14   Sentencing Guidelines might apply to your case?

01:32PM  15            THE DEFENDANT:  Yes.

01:32PM  16            THE COURT:  Now, I'm sure he was just as careful as I

01:32PM  17   am, when I say "might," as I sit here today, I use the term

01:32PM  18   "might" because I cannot with precision tell you how the

01:32PM  19   Sentencing Guidelines apply to your case.  I will not be able

01:32PM  20   to do that until after the presentence investigation and report

01:32PM  21   that I mentioned a few minutes ago have been completed and

01:32PM  22   after I have the benefit of any comments or objections to the

01:32PM  23   contents of that report that either counsel may wish to provide

01:32PM  24   to me.  Do you understand that?

01:32PM  25            THE DEFENDANT:  I understand.

01:32PM  1          THE COURT:  That process takes about three to four

01:32PM  2    months in the normal course.  At that point in time, I will be

01:32PM  3    able to tell you, with the benefit of that presentence

01:32PM  4    investigation and report, how the Sentencing Guidelines apply

01:32PM  5    to your case.  At that time, I will also be able to apply the

01:32PM  6    Section 3553(a) factors that I mentioned a minute ago.  When I

01:32PM  7    do those things, do you understand, sir, that I could impose a

01:32PM  8    sentence that is more or less than what the guidelines call

01:33PM  9    for?

01:33PM  10         THE DEFENDANT:  Yes.

01:33PM  11         THE COURT:  It is possible, since I just said I could

01:33PM  12   impose a sentence either more or less than what the guidelines

01:33PM  13   call for, one of those possibilities is that I impose a

01:33PM  14   sentence that is more than what the guidelines call for and

01:33PM  15   more than what you expect.  If I do either of those things, do

01:33PM  16   you understand, sir, that you will still be bound by your plea

01:33PM  17   as well as your plea agreement and will have no right to

01:33PM  18   withdraw from either on that basis?

01:33PM  19         THE DEFENDANT:  I understand.

01:33PM  20         THE COURT:  Do you understand further that despite any

01:33PM  21   discussions you may have had with Mr. Victor, with Mr. Inciong,

01:33PM  22   or with anyone else regarding the type or the duration of the

01:33PM  23   sentence you are likely to receive or regarding any sentencing

01:33PM  24   recommendation that they may wish to provide to me, I am not

01:33PM  25   bound by those discussions nor am I bound by any

01:33PM  1    recommendations provided to me, and I could impose a sentence
01:33PM  2    that is more severe than what you expect up to the maximum
01:34PM  3    permitted by law?
01:34PM  4              THE DEFENDANT:  I understand.
01:34PM  5              THE COURT:  Has anyone made any promises at all to you
01:34PM  6    regarding what your sentence will be?
01:34PM  7              THE DEFENDANT:  No, sir.
01:34PM  8              THE COURT:  Do you understand that at the time of
01:34PM  9    sentencing there is no limitation on the information that I can
01:34PM  10   consider regarding your background, your character, and your
01:34PM  11   conduct except that the information I use must be sufficiently
01:34PM  12   reliable?
01:34PM  13             THE DEFENDANT:  I understand.
01:34PM  14             THE COURT:  Do you understand that if a term of
01:34PM  15   imprisonment is imposed as part of your sentence, a term of
01:34PM  16   what we call supervised release is very likely to follow, and
01:34PM  17   if you were to violate any of the conditions of supervised
01:34PM  18   release, additional prison time could be imposed?
01:34PM  19             THE DEFENDANT:  I understand.
01:34PM  20             THE COURT:  Do you also understand, sir, that in the
01:34PM  21   federal system parole has been abolished, and what that means
01:34PM  22   from a practical standpoint is if a term of imprisonment is
01:34PM  23   imposed as part of your sentence, you will not be released
01:34PM  24   early on parole?
01:34PM  25             THE DEFENDANT:  I understand.

01:34PM   1            THE COURT:  Do you understand, Mr. Freitas, that as

01:34PM   2    part of any final judgment, which includes a sentence in this

01:34PM   3    case, the Court could order you to pay a fine as well as a

01:35PM   4    special assessment?

01:35PM   5            THE DEFENDANT:  Yes.

01:35PM   6            THE COURT:  And the Court could order you to forfeit

01:35PM   7    property to the United States, including the property described

01:35PM   8    in paragraph 7D, as in David, of your plea agreement as well as

01:35PM   9    the property described in the various forfeiture notice

01:35PM  10    sections of the second superseding indictment.

01:35PM  11            THE DEFENDANT:  Yes.

01:35PM  12            THE COURT:  All right.  So we have reached the point

01:35PM  13    in this afternoon's proceedings that I mentioned a few minutes

01:35PM  14    ago when we talked about the need to waive your right not to

01:35PM  15    incriminate yourself.  I need to be sure that you in fact

01:35PM  16    committed the crimes that you have been charged with in Counts

01:35PM  17    1 and 13 of the second superseding indictment.  The first step

01:35PM  18    in that process is to turn to the government's attorney,

01:35PM  19    Mr. Inciong, to set forth the essential elements of those two

01:35PM  20    counts.

01:35PM  21            MR. INCIONG:  Yes, Your Honor.  In regard to Count 1

01:35PM  22    which is the conspiring to violate the racketeering laws of the

01:35PM  23    United States, there are three elements:

01:35PM  24            First, that beginning in the late 1990s and ending on

01:35PM  25    or about June of 2020, there was an agreement between

01:36PM   1   Mr. Freitas and at least one other person to commit at least
01:36PM   2   one crime as charged in the second superseding indictment, in
01:36PM   3   this case to violate the racketeering laws of the United
01:36PM   4   States.
01:36PM   5          Secondly, the defendant became a member of that
01:36PM   6   conspiracy knowing of at least one of its objects and intending
01:36PM   7   to help accomplish it.
01:36PM   8          Thirdly, that one of the members of the conspiracy
01:36PM   9   performed at least one overt act for the purpose of carrying
01:36PM  10   out the conspiracy.
01:36PM  11          Your Honor, in regard to the second element, the
01:36PM  12   object of the conspiracy, there are a number of what I will
01:36PM  13   refer to as sub-elements that the United States also believes
01:36PM  14   it would be required to prove beyond a reasonable doubt.  Those
01:36PM  15   go to the participation in the affairs of an association in
01:36PM  16   fact, pursuant to Title 18, U.S. Code 1962, subsection C.
01:36PM  17   Those sub-elements are:
01:36PM  18          First, there was an ongoing enterprise with some sort
01:36PM  19   of formal or informal framework for carrying out its
01:37PM  20   objectives, consisting of a group of persons associated
01:37PM  21   together for a common purpose or engaging in a course of
01:37PM  22   conduct.
01:37PM  23          Secondly, the defendant was employed by or associated
01:37PM  24   with that enterprise.
01:37PM  25          Third, that the defendant participated either directly

01:37PM    1    or indirectly in the conduct of the affairs of the enterprise

01:37PM    2    through a pattern of racketeering activity or collection of

01:37PM    3    unlawful debt.

01:37PM    4         And, fourth, that the enterprise engaged in or its

01:37PM    5    activities in some way affected commerce, either between one

01:37PM    6    state and another or between the United States and a foreign

01:37PM    7    country.

01:37PM    8         Those are the elements for Count 1.

01:37PM    9         In regard to Count 13, the use of a chemical weapon,

01:37PM   10    in this case chloropicrin, there are two elements:

01:37PM   11         First, that the defendant knowingly possessed or used

01:37PM   12    that substance; and secondly, it was a chemical weapon.  Again,

01:38PM   13    there are what I will refer to as two sub-elements that the

01:38PM   14    United States believes it will also be required to prove beyond

01:38PM   15    a reasonable doubt if this matter went to trial.

01:38PM   16         These are pursuant to the U.S. Supreme Court opinion

01:38PM   17    in U.S. versus Bond, 134 Supreme Court 2077.  And those

01:38PM   18    sub-elements are:  First, that the substance was an extremely

01:38PM   19    dangerous substance or toxic chemical; and secondly, that that

01:38PM   20    substance had the potential to cause severe harm to people.

01:38PM   21         Those are the elements at issue, Your Honor.

01:38PM   22         THE COURT:  All right.  Mr. Victor, do you have any

01:38PM   23    disagreement with AUSA Inciong's description of the elements of

01:38PM   24    either Count 1 or Count 13?

01:38PM   25         MR. VICTOR:  No, Judge.

01:38PM  1          THE COURT:  I'll turn back to Mr. Inciong to set forth
01:38PM  2     the evidence that the government would offer in this case if it
01:38PM  3     were to proceed to trial.
01:38PM  4          MR. INCIONG:  Yes, Your Honor.  If this case proceeded
01:38PM  5     to trial, the United States would produce evidence and
01:38PM  6     testimony to show the following:
01:39PM  7          First, that from between November of 2014 and up to
01:39PM  8     including June of 2020, Kaulana Freitas, the defendant and
01:39PM  9     others, known and unknown, were members and associates of the
01:39PM  10    Miske Enterprise.  Members and associates of the Miske
01:39PM  11    Enterprise operated principally under the direction and
01:39PM  12    protection of Michael J. Miske, Jr. who used his power over
01:39PM  13    members and associates of the Miske Enterprise, his reputation
01:39PM  14    for violence in the community and the various corporate
01:39PM  15    entities under his control to enrich the members and associates
01:39PM  16    of the Miske Enterprise and to protect their criminal
01:39PM  17    activities.
01:39PM  18          The evidence would show that the Miske Enterprise,
01:39PM  19    including its leadership, membership and associates constituted
01:39PM  20    an enterprise, as that term is defined in Title 18, U.S. Code,
01:39PM  21    Section 1961, subparagraph 4; that is, a group of individuals
01:39PM  22    and entities associated in fact.
01:39PM  23          The evidence would show the Miske Enterprise was
01:40PM  24    engaged in and its activities affected interstate and foreign
01:40PM  25    commerce.  Some of those examples, Your Honor, which I will

01:40PM   1   talk about momentarily are the use of chemicals which were
01:40PM   2   transported from out of state into the District of Hawaii to be
01:40PM   3   used in furtherance of the conspiracy; same situation with
01:40PM   4   illegal drugs, such as cocaine, methamphetamine; also firearms
01:40PM   5   which were manufactured outside the State of Hawaii,
01:40PM   6   transported to Hawaii for use in either assaults, robberies, or
01:40PM   7   other crimes.
01:40PM   8        The evidence would show that the Miske Enterprise
01:40PM   9   operated within the District of Hawaii and elsewhere and
01:40PM   10   constituted an ongoing organization whose members and
01:40PM   11   associates functioned as a continuing unit for a common purpose
01:40PM   12   of achieving the objectives of the Miske Enterprise.
01:40PM   13        The evidence would show that beginning at least in or
01:40PM   14   about 2014, Mr. Freitas and others, known and unknown, being
01:40PM   15   persons employed by and associated with the Miske Enterprise
01:41PM   16   willfully and knowingly combined, conspired, confederated and
01:41PM   17   agreed together and with each other to violate the racketeering
01:41PM   18   laws of the United States, namely, Title 18, U.S. Code, Section
01:41PM   19   1962, subparagraph D.  That is, to conduct and participate
01:41PM   20   directly and indirectly in the conduct of the affairs of the
01:41PM   21   Miske Enterprise through a pattern of racketeering activity as
01:41PM   22   that term is defined in Title 18, U.S. Code, Sections 1961,
01:41PM   23   subparagraphs 1 and 5.
01:41PM   24        The racketeering activity to which Mr. Freitas and
01:41PM   25   others agreed included offenses involving chemical weapons as

01:41PM   1   alleged in Counts 12 and 13 of the second superseding

01:41PM   2   indictment, offenses involving the felonious trafficking of

01:41PM   3   controlled substances as alleged in Count 16 of the second

01:41PM   4   superseding indictment, and acts involving robbery.  The

01:41PM   5   evidence would also show that Mr. Freitas engaged in other

01:41PM   6   criminal conduct associated with the Miske Enterprise including

01:42PM   7   assaults.

01:42PM   8         In regard to acts relating to chemical weapons, the

01:42PM   9   evidence would show that on or about March 4, 2017,

01:42PM  10   Mr. Freitas, along with Michael J. Miske, Jr., John B. Stancil,

01:42PM  11   Jacob Smith and other members and associates of the enterprise

01:42PM  12   participated in a chemical weapon attack against the District

01:42PM  13   nightclub in Honolulu using the chemical chloropicrin. This

01:42PM  14   attack was carried out on the orders of Michael J. Miske, Jr.

01:42PM  15         The evidence would show that in advance of the attack,

01:42PM  16   Jacob Smith obtained the chloropicrin from John Stancil.  Then

01:42PM  17   in the early morning hours of March 4, 2017, Mr. Smith drove

01:42PM  18   Mr. Freitas to the District night club where Mr. Freitas

01:42PM  19   entered the club and released the chloropicrin.  The release of

01:42PM  20   the chloropicrin resulted in patrons of the nightclub

01:43PM  21   scrambling for the exit as they experienced burning in their

01:43PM  22   eyes and difficulty breathing.  The club was forced to evacuate

01:43PM  23   and close early resulting in a nonsubstantial financial loss.

01:43PM  24         The evidence would show that chloropicrin qualifies as

01:43PM  25   a toxic chemical within the meaning of Title 18, U.S. Code,

01:43PM  1   Section 229(f), subparagraph 8, subparagraph A, and that

01:43PM  2   Mr. Freitas' use of chloropicrin in the chemical weapon attack

01:43PM  3   on the District nightclub on or about March 4, 2017 was

01:43PM  4   intended for a purpose -- was in fact used for a purpose

01:43PM  5   prohibited by Title 18, U.S. Code, Section 229.  At the time

01:43PM  6   Mr. Freitas assisted with the chemical weapon attack, he

01:43PM  7   understood that his conduct was wrongful and unlawful.

01:43PM  8          Mr. Freitas also knew he was using a toxic chemical to

01:43PM  9   carry out the attack.  While Mr. Freitas did not have specific

01:43PM  10  knowledge at the time that the chemical he released was

01:44PM  11  chloropicrin, he does not dispute that at a trial the

01:44PM  12  government would produce evidence to show the chemical

01:44PM  13  Mr. Freitas disbursed was in fact chloropicrin.

01:44PM  14         The United States would make that proof, Your Honor,

01:44PM  15  by a number of things, including expert testimony on the nature

01:44PM  16  of that chemical and testing of an actual chemical that was

01:44PM  17  recovered from a vehicle in which Mr. Freitas was the driver

01:44PM  18  sometime after the attack in which a bottle was found in a

01:44PM  19  backpack -- a liquor bottle that actually contained

01:44PM  20  chloropicrin.

01:44PM  21         In regard to offenses involving the felonious

01:44PM  22  trafficking of controlled substances, the evidence would show

01:44PM  23  that no later than 2017 and continuing to at least about

01:44PM  24  August 2018, Mr. Freitas conspired with others to distribute

01:44PM  25  and possess with intent to distribute Oxycodone, a Schedule II

01:44PM   1   controlled substance.  Over the course of the conspiracy among
01:44PM   2   the individuals with whom Mr. Freitas worked to distribute
01:45PM   3   Oxycodone were Jacob Smith and Nicholas Carignan.  Text
01:45PM   4   messages found on Jacob Smith's cellphone showed that Smith and
01:45PM   5   Freitas, who was using the account name of, quote, Shortly
01:45PM   6   Bull, discussed yellows, which was a code word for Oxycodone
01:45PM   7   pills.  In the messages Mr. Freitas stated he would attempt to
01:45PM   8   obtain the yellows and later confirmed that he was in fact in
01:45PM   9   possession of Oxycodone.  Smith responded that he and Carignan
01:45PM  10   would take 40 of them and Smith later acknowledged that he
01:45PM  11   purchased Oxycodone pills for $20 each from Mr. Freitas.
01:45PM  12         Although Miske was not directly involved in Freitas'
01:45PM  13   trafficking activity, Mr. Freitas benefitted from the
01:45PM  14   protection he derived from being associated with Miske and the
01:45PM  15   Miske Enterprise in his drug trafficking activity.
01:45PM  16         In regard to acts involving robbery, the evidence
01:45PM  17   would show that at various times, no later than 2015 and
01:45PM  18   continuing until at least 2018, Mr. Freitas and other members
01:46PM  19   of the Miske Enterprise engaged in robberies and attempted
01:46PM  20   robberies.  For example, on May 14, 2016, Mr. Freitas, along
01:46PM  21   with John B. Stancil and several other individuals,
01:46PM  22   participated in a setup and robbery of an individual they
01:46PM  23   believed to be a local drug dealer in possession of a large
01:46PM  24   amount of cash.  After the individual was lured to the Hawaii
01:46PM  25   Kai boat ramp at Maunlua Bay in Honolulu, Mr. Freitas and other

01:46PM  1  enterprise members began to assault him, including kicking him

01:46PM  2  and pistol whipping him in the head.  The enterprise members

01:46PM  3  demanded the individual's car keys and removed his pants which

01:46PM  4  held the keys to his car along with approximately $7,000 in

01:46PM  5  cash.

01:46PM  6          One assailant pulled a chain off the victim's neck

01:46PM  7  before fleeing the scene in the victim's vehicle.  The

01:46PM  8  individual who sustained minor cuts to his forehead, elbows,

01:46PM  9  and knees, as a result of the assault, reported that his iPhone

01:46PM  10  was also taken in addition to his car and cash.  Although Miske

01:47PM  11  did not direct this assault and robbery and in fact later

01:47PM  12  chastised the assailants for committing the assault at the

01:47PM  13  Hawaii Kai boat ramp at Maunalua Bay, an area Mr. Miske

01:47PM  14  associated with his deceased son, Mr. Freitas and the others

01:47PM  15  involved in the assault were emboldened again by their

01:47PM  16  association with Miske and the Miske Enterprise and relied on

01:47PM  17  the protection they could count on as enterprise members.

01:47PM  18          The evidence will show there was other criminal

01:47PM  19  conduct that was committed at Mr. Miske's direction,

01:47PM  20  specifically Mr. Freitas and other members of the Miske

01:47PM  21  Enterprise assaulted and attempted to assault others who

01:47PM  22  angered Mr. Miske.  For example, on November 13th of 2014,

01:47PM  23  Mr. Freitas again, with John B. Stancil, in using the threat of

01:47PM  24  force, attempted to retrieve a Rolex watch from Johnathan

01:47PM  25  Fraser at Kaneohe District Park.  Fraser had stolen the watch

01:47PM  1   from Miske who had ordered a beating of Fraser early in the day
01:48PM  2   as retribution and then ordered Stancil and Freitas to retrieve
01:48PM  3   the watch from Fraser.  After Fraser arrived at the park,
01:48PM  4   Mr. Freitas emerged from behind the tree and demanded the watch
01:48PM  5   from Fraser.  Fraser got back into his vehicle and fled the
01:48PM  6   parking lot as he was chased by Stancil onto Kahikili Highway.
01:48PM  7   Fraser was ultimately able to escape and then met with Honolulu
01:48PM  8   police officers to whom he reported the incident.
01:48PM  9           That is the summary of the evidence that would be
01:48PM 10   produced to prove not only the racketeering count in Count 1
01:48PM 11   but the chemical weapon offense in Count 13.
01:48PM 12           THE COURT:  Mr. Freitas, do you understand the
01:48PM 13   evidence that the government would offer in this case if it
01:48PM 14   were to proceed to trial?
01:48PM 15           THE DEFENDANT:  Yes.
01:48PM 16           THE COURT:  And do you agree, sir, that what the
01:48PM 17   government said you did is true?
01:48PM 18           THE DEFENDANT:  Yes.
01:48PM 19           THE COURT:  In your own words, Mr. Freitas, please
01:48PM 20   describe what you did that makes you guilty of Counts 1 and 13?
01:48PM 21           THE DEFENDANT:  So on Count 13 I am guilty for putting
01:49PM 22   the chemical weapon inside District nightclub, inside the trash
01:49PM 23   can.  I take full responsibility, and I'm sorry for everything.
01:49PM 24   Count 1, I know it's the racketeering assaults.  I'm sorry, and
01:49PM 25   I take full responsibility.  Yes, I was involved in a factual

01:49PM    1    basis that Mr. Inciong said.

01:49PM    2              THE COURT:  Okay.  With regard to Count 13, since

01:49PM    3    that's what you started with, the release of chloropicrin in

01:49PM    4    the District nightclub, that occurred on or about March 4,

01:49PM    5    2017; is that true?

01:49PM    6              THE DEFENDANT:  Yes.

01:49PM    7              THE COURT:  And you obtained chloropicrin from where?

01:49PM    8              THE DEFENDANT:  From Jake Smith.

01:49PM    9              THE COURT:  That's the Jacob Smith that Mr. Inciong

01:50PM   10    was referring to?

01:50PM   11              THE DEFENDANT:  Jacob Smith.

01:50PM   12              THE COURT:  He also went by Jake?

01:50PM   13              THE DEFENDANT:  Yes.

01:50PM   14              THE COURT:  And the release of chloropicrin in this

01:50PM   15    nightclub was accomplished at the direction of Mr. Michael

01:50PM   16    Miske, Jr.?

01:50PM   17              THE DEFENDANT:  Yes, Your Honor.

01:50PM   18              THE COURT:  And the objective was to disrupt the

01:50PM   19    business operations of that particular nightclub?

01:50PM   20              THE DEFENDANT:  That is correct.

01:50PM   21              THE COURT:  And that's because Mr. Miske owned his own

01:50PM   22    nightclub at the same time which was a competitor?

01:50PM   23              THE DEFENDANT:  I believe so.  He did own that

01:50PM   24    nightclub before.

01:50PM   25              THE COURT:  District nightclub was in competition with

01:50PM   1   Mr. Miske's nightclub?

01:50PM   2          THE DEFENDANT:  Yes.

01:50PM   3          THE COURT:  Which was known as the M nightclub, I

01:50PM   4   believe?

01:50PM   5          THE DEFENDANT:  Yes.

01:50PM   6          THE COURT:  And at that time you knew that the

01:50PM   7   chloropicrin would have some kind toxic effect on the patrons

01:50PM   8   of that nightclub?

01:50PM   9          THE DEFENDANT:  At that time, I did not know that was

01:50PM   10  chloropicrin.  I thought it was some kind of Mace.

01:50PM   11         THE COURT:  Even though you did not know the name of

01:51PM   12  the chemical that you were disbursing, you knew that it would

01:51PM   13  have some kind of effect on the patrons, correct?

01:51PM   14         THE DEFENDANT:  Correct.

01:51PM   15         THE COURT:  And it did; is that fair?

01:51PM   16         THE DEFENDANT:  Yes.

01:51PM   17         THE COURT:  The nightclub patrons, after you released

01:51PM   18  the chloropicrin, ended up leaving the nightclub because of the

01:51PM   19  effects that it had on them?

01:51PM   20         THE DEFENDANT:  Yes, sir.

01:51PM   21         THE COURT:  Now, with regard to Count 1, is it true

01:51PM   22  then that in the time frame that the government has mentioned,

01:51PM   23  which I believe is 2014 extending until 2020, I believe that

01:51PM   24  you had an agreement with others to include Mr. Stancil,

01:51PM   25  Mr. Smith, and Mr. Miske, all individuals that are charged in

| 01:51PM | 1 | either this case or their own separate case, to violate the |
|---|---|---|
| 01:51PM | 2 | racketeering laws of the United States in a number of ways; is |
| 01:51PM | 3 | that correct? |
| 01:51PM | 4 | THE DEFENDANT:  That is correct. |
| 01:51PM | 5 | THE COURT:  And one of those ways which benefitted the |
| 01:52PM | 6 | organization that the government has referred to as the Miske |
| 01:52PM | 7 | Enterprise were through the assaults that you mentioned a |
| 01:52PM | 8 | minute ago? |
| 01:52PM | 9 | THE DEFENDANT:  Yes. |
| 01:52PM | 10 | THE COURT:  Can you give me an example of one such |
| 01:52PM | 11 | instance? |
| 01:52PM | 12 | THE DEFENDANT:  With the assault? |
| 01:52PM | 13 | THE COURT:  Yes, sir. |
| 01:52PM | 14 | THE DEFENDANT:  At the Maunalua Bay incident, we |
| 01:52PM | 15 | went -- I followed Michael Char (phonetic) to the bay, Maunalua |
| 01:52PM | 16 | Bay, and we was hanging out over there.  And then another group |
| 01:52PM | 17 | of individuals came by and gun pointed him, made him go to the |
| 01:52PM | 18 | ground, I was on the ground and John Stancil walked away.  And |
| 01:52PM | 19 | they started assaulting him, kicking him, pistol whipping him, |
| 01:52PM | 20 | took off his pants, took his chain and fled in his car. |
| 01:53PM | 21 | THE COURT:  And this instance at Maunalua Bay, which |
| 01:53PM | 22 | is on the east side of Honolulu, correct? |
| 01:53PM | 23 | THE DEFENDANT:  Yes, Hawaii Kai. |
| 01:53PM | 24 | THE COURT:  This instance occurred in May 2016? |
| 01:53PM | 25 | THE DEFENDANT:  Yes, I believe so. |

01:53PM  1              THE COURT:  And the objective was to rob this

01:53PM  2      individual who was a known local drug dealer to you?

01:53PM  3              THE DEFENDANT:  That is correct.

01:53PM  4              THE COURT:  And you wanted to take from him whatever

01:53PM  5      stash he may have had -- drug stash he may have had at that

01:53PM  6      time?

01:53PM  7              THE DEFENDANT:  Yes.

01:53PM  8              THE COURT:  Any cash that he had on his person; is

01:53PM  9      that fair?

01:53PM  10             THE DEFENDANT:  Yes.

01:53PM  11             THE COURT:  And his vehicle?

01:53PM  12             THE DEFENDANT:  Yes, sir.

01:53PM  13             THE COURT:  And all of those things were in fact taken

01:53PM  14     from him by you and others?

01:53PM  15             THE DEFENDANT:  Yes.

01:53PM  16             THE COURT:  And the others included Mr. Stancil?

01:53PM  17             THE DEFENDANT:  Yes.

01:53PM  18             THE COURT:  Is it also the case that you were engaged

01:53PM  19     in the 2017, 2018 time frame with the sale of controlled

01:53PM  20     substances?

01:53PM  21             THE DEFENDANT:  Yes, sir.

01:53PM  22             THE COURT:  And one example of that is, as described

01:53PM  23     in the plea agreement, you sold Oxycodone; is that fair?

01:53PM  24             THE DEFENDANT:  Yes.

01:54PM  25             THE COURT:  And you did so to others including Jake

01:54PM  1   Smith and Nick Carignan?

01:54PM  2        THE DEFENDANT:  Yes, to Jacob Smith.

01:54PM  3        THE COURT:  Right.  You sold it to Jacob Smith as well

01:54PM  4   as to Nicholas Carignan; is that fair?

01:54PM  5        THE DEFENDANT:  Yes.

01:54PM  6        THE COURT:  And this is not something that Mr. Miske

01:54PM  7   directed; is that also fair?

01:54PM  8        THE DEFENDANT:  No, he did not direct anything, the

01:54PM  9   robbery or the drugs.

01:54PM  10        THE COURT:  Is it also fair though that you and the

01:54PM  11   other members of the Miske Enterprise who were involved in

01:54PM  12   these specific incidences benefitted from the protection of

01:54PM  13   that enterprise?

01:54PM  14        THE DEFENDANT:  Yes.

01:54PM  15        THE COURT:  To make a finer point, the whole -- you

01:54PM  16   folks were emboldened to engage in these activities, the drug

01:55PM  17   dealing, the assaults of the local drug dealers, because you

01:55PM  18   were mindful that these folks were unlikely to retaliate

01:55PM  19   against any of the persons involved in these assaults and

01:55PM  20   dealings because you were associated with the Miske Enterprise;

01:55PM  21   is that fair?

01:55PM  22        THE DEFENDANT:  Yes, sir.

01:55PM  23        THE COURT:  Are both counsel satisfied that a factual

01:55PM  24   basis for Mr. Freitas' plea of guilty to Counts 1 and 13 have

01:55PM  25   been established?

01:55PM  1                    MR. INCIONG:  Yes, the government is satisfied.

01:55PM  2                    MR. VICTOR:  Yes, Judge.

01:55PM  3                    THE COURT:  Then I'll turn back to you, Mr. Freitas.

01:55PM  4       As to Count 1 of the second superseding indictment, how do you

01:55PM  5       plead:  guilty or not guilty?

01:55PM  6                    THE DEFENDANT:  Guilty, Your Honor.

01:55PM  7                    THE COURT:  As to Count 13 of the second superseding

01:55PM  8       indictment, how do you plead:  guilty or not guilty?

01:55PM  9                    THE DEFENDANT:  Guilty, Your Honor.

01:55PM 10                    THE COURT:  The Court finds that the defendant,

01:55PM 11       Mr. Freitas, understands the nature of this afternoon's

01:55PM 12       proceedings and he is competent to enter a knowing and informed

01:55PM 13       plea.

01:55PM 14                    The Court further finds that Mr. Freitas has in fact

01:56PM 15       entered a knowing, informed, and voluntary plea of guilty to

01:56PM 16       Counts 1 and 13 of the second superseding indictment.

01:56PM 17       Mr. Freitas has done so without coercion, force or threat.

01:56PM 18                    Mr. Freitas' plea of guilty is supported by an

01:56PM 19       independent basis in fact containing each of the essential

01:56PM 20       elements of Counts 1 and 13 and that Mr. Freitas understands

01:56PM 21       the trial, as well as the civil rights that he would have in

01:56PM 22       the absence of pleading guilty, but nonetheless knowingly and

01:56PM 23       voluntarily elects to waive those rights.  The Court finds that

01:56PM 24       in pleading guilty Mr. Freitas understands the factors that the

01:56PM 25       Court will consider at the time of sentencing, which includes

01:56PM   1   the potential penalties applicable to a violation of Counts 1
01:56PM   2   and 13 and that the defendant has forfeited and is agreeable to
01:56PM   3   forfeiting all right, title, interest, and claim to the
01:56PM   4   property described in paragraph 7 of the plea agreement.
01:56PM   5         Mr. Freitas, as you have acknowledged, sir, that you
01:56PM   6   are in fact guilty, I accept your guilty plea and I adjudge you
01:57PM   7   guilty as charged of Counts 1 and 13.  The Court orders the
01:57PM   8   plea agreement in this case to be filed, but I reserve
01:57PM   9   determination of whether to accept it until after a presentence
01:57PM  10   investigation and report have both been prepared.
01:57PM  11         Ms. Kimura, may we get a sentencing date please?
01:57PM  12         THE CLERK:  July 27, 2022 at nine a.m.
01:57PM  13         THE COURT:  Is that date and time acceptable with both
01:57PM  14   counsel?
01:57PM  15         MR. INCIONG:  Yes, Your Honor.
01:57PM  16         MR. VICTOR:  Could I have a moment, Judge?
01:57PM  17         THE COURT:  Yes.  This is an initial date.  I realize
01:57PM  18   that the date may need to get moved.  In fact, it probably is
01:57PM  19   likely at this point that it will need to get moved, but this
01:57PM  20   is an initial setting.
01:57PM  21         MR. VICTOR:  We were just discussing whether it made
01:57PM  22   more sense to set it off as far as December, because I think
01:57PM  23   there is little to no chance we are going to get it done before
01:57PM  24   then, rather than just continue I suspect.
01:57PM  25         THE COURT:  Any issue with that, Mr. Inciong?

01:58PM   1               MR. INCIONG:  No objection.

01:58PM   2               THE COURT:  Why don't we move it into the first part

01:58PM   3   of the following year is probably more realistic.

01:58PM   4               Ms. Kimura, can we get a date in the early part of

01:58PM   5   2023?

01:58PM   6               THE CLERK:  How about January 11th at 9:00?

01:58PM   7               THE COURT:  Okay, January 11, 2023 at nine a.m. Is

01:58PM   8   that date acceptable?

01:58PM   9               MR. INCIONG:  Yes, Your Honor.

01:58PM   10              MR. VICTOR:  Turns out I'm free, Judge.  Yes.

01:58PM   11              THE COURT:  It's almost a year away.  Again, if we

01:58PM   12   need to, we can move it off that date as well, but that's

01:58PM   13   probably as good a date as any time.  Mr. Freitas has been out

01:58PM   14   on pretrial release by order of this Court as of January 5th of

01:58PM   15   this year.  The pretrial services report that I've read

01:58PM   16   recently reports no issues whatsoever.

01:58PM   17              Any issue with allowing him to remain out on bail

01:58PM   18   subject to the same conditions as he has been from the

01:58PM   19   government's perspective?

01:58PM   20              MR. INCIONG:  No objection, Your Honor.

01:58PM   21              THE COURT:  All right.  We will leave pretrial release

01:59PM   22   undisturbed for the time being.

01:59PM   23              Mr. Freitas, I will caution you as I do, it's not

01:59PM   24   anything you've gone, but I do this with every defendant who

01:59PM   25   remains out on release pending sentencing, that you are still

01:59PM   1   subject to all of the pretrial release conditions that you have
01:59PM   2   been operating just fine with, since you were released, and
01:59PM   3   have had no issues, like I said, at all that I can glean from
01:59PM   4   the pretrial services' most recent report.  However, any single
01:59PM   5   violation of your pretrial release conditions could have
01:59PM   6   negative and serious consequences; those consequences include
01:59PM   7   your immediate detention.  Do you understand that?
01:59PM   8           THE DEFENDANT:  Yes, sir.
01:59PM   9           THE COURT:  So as I said before, I think when we last
01:59PM  10   had our hearing, if you have any issues at all with any of the
01:59PM  11   pretrial release conditions, please be proactive about any
01:59PM  12   issues that you identify, speak with your lawyer, Mr. Victor,
01:59PM  13   about it, speak with your supervising officer.  The last thing
01:59PM  14   you want is for any transgression to come to my attention.  I'm
02:00PM  15   sure that's the last thing Mr. Victor wants pending sentencing
02:00PM  16   as I'm sure he has told you; so be active about it.  If you
02:00PM  17   have any issues -- it's not like pretrial release conditions
02:00PM  18   can't be changed.  If there is some problem with them that you
02:00PM  19   foresee, let's have a discussion about it before it becomes a
02:00PM  20   violation.  Okay?
02:00PM  21           THE DEFENDANT:  I understand.
02:00PM  22           THE COURT:  Any other issue that we can take up this
02:00PM  23   afternoon in this matter that needs the Court's attention?
02:00PM  24           MR. INCIONG:  I don't believe so, Your Honor.
02:00PM  25           THE COURT:  Mr. Victor.

02:00PM  1              MR. VICTOR:  Judge, will the presentence investigation

02:00PM  2    and presentence report continue on the regular schedule?

02:00PM  3              THE COURT:  It will, correct.  Even though sentencing

02:00PM  4    is off for nine or ten months, I have no doubt that as time

02:00PM  5    permits with probation they will start the PSR drafting process

02:00PM  6    in earnest well before January of next year.

02:00PM  7              MR. VICTOR:  Thank you, Judge.  Nothing further.

02:00PM  8              THE COURT:  All right.  We will see you back here in

02:00PM  9    January or on some other date that we identify that's mutually

02:01PM  10   convenient.

02:01PM  11             (Proceedings were concluded at 2:01 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    COURT REPORTER'S CERTIFICATE.

 2              I, Gloria T. Bediamol, Official Court Reporter, United

 3    States District Court, District of Hawaii, do hereby certify

 4    that pursuant to 28 U.S.C. §753 the foregoing is a complete,

 5    true, and correct transcript from the stenographically reported

 6    proceedings held in the above-entitled matter and that the

 7    transcript page format is in conformance with the regulations

 8    of the Judicial Conference of the United States.

 9

10              DATED at Honolulu, Hawaii, April 11, 2023.

11

12

13                                  /s/ Gloria T. Bediamol

14                                  GLORIA T. BEDIAMOL.

15                                  RMR, CRR, FCRR

16

17

18

19

20

21

22

23

24

25
```