CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

MICHAEL D. NAMMAR
MARK A. INCIONG  CA BAR #163443
W. KEAUPUNI AKINA #11565
Assistant U.S. Attorneys
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone:  (808) 541-2850
Facsimile:   (808) 541-2958
Email:     Michael.Nammar@usdoj.gov
           Mark.Inciong@usdoj.gov
           Keaupuni.Akina@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>MICHAEL J. MISKE, JR.,　　(01)<br>　　aka "Bro,"<br>JOHN B. STANCIL,　　　　(02)<br>DELIA FABRO-MISKE, and　(12)<br>JASON K. YOKOYAMA,　　(13)<br><br>　　　　　　Defendants. | CR. NO. 19-00099 DKW-KJM<br><br>UNITED STATES' MOTION *IN LIMINE* TO PRECLUDE USE OF POLYGRAPH RESULTS; CERTIFICATE OF SERVICE |

UNITED STATES' MOTION *IN LIMINE* TO
PRECLUDE USE OF POLYGRAPH RESULTS

The United States moves *in limine* for a ruling that the defense may not refer to or admit the results of polygraph tests that have been taken by various individuals and witnesses. Neither use would be appropriate under Federal Rules of Evidence 702 and 403, and their admission would also be improper under Federal Rule of Evidence 608(b).

1. Over the course of the investigation into the racketeering enterprise charged in this case, law enforcement has conducted polygraph examinations of certain individuals. The questions generally concerned the abduction and murder of Johnathan Fraser. Individuals were asked general questions concerning their knowledge about and participation in that crime. Some of these individuals received results indicating deception or some degree of deception. The examination of other individuals indicated no deception.

Some of the individuals who previously submitted to polygraph examinations are now expected to testify at trial in the government's case-in-chief. At least one individual who submitted to a polygraph examination, and is now expected to testify as a significant cooperating witness, received results indicating no deception. At least two other individuals, now expected to testify as significant cooperating witnesses, received results indicating some degree of deception.

In addition, an individual who is now deceased, James Borling-Salas, also submitted to a polygraph examination and received results indicating no deception.

(Borling-Salas recanted certain statements he had previously made about the murder of Johnathan Fraser before submitting to the polygraph examination).

    2.  Polygraph examinations can be a useful law enforcement investigative technique, but a court should be wary of allowing the admission of their results into a court proceeding. As the Supreme Court has recognized, "there is simply no way to know in a particular case whether a polygraph examiner's conclusion is accurate, because certain doubts and uncertainties plague even the best polygraph exams." *United States v. Scheffer*, 523 U.S. 303, 312 (1998) (upholding Military Rule of Evidence 707, which makes polygraph evidence inadmissible in court-martial proceedings, against an argument that the rule unconstitutionally abridged the right of accused members of the military to present a defense).[1] At the same time, "by its very nature, polygraph evidence may diminish the jury's role in making credibility determinations," as it may have an "aura of infallibility" that is not present in a jury's consideration of witness testimony, which is subject to cross-examination. *Id.* at 313 (portion of opinion joined by three other justices).

    The Ninth Circuit, too, has recognized the dangers of allowing polygraph examinations to be used in a court proceeding. Although it concluded that

---

[1] The Supreme Court was sharply divided on a number of issues in *Scheffer*, and some portions of Justice Thomas's opinion did not command a majority, but the language quoted above, appearing in Part II-A of the opinion, was joined by seven other justices.

2

*Daubert*'s flexible inquiry no longer allowed for a *per se* rule excluding polygraph evidence, the Court expressed no "new enthusiasm for admission of unstipulated polygraph evidence," noting its "grave potential for interfering with the deliberative process." *United States v. Cordoba*, 104 F.3d 225, 228 (9th Cir. 1997). And the Ninth Circuit has emphasized district courts' "wide discretion" to "reject the admission of polygraph evidence on the basis of any applicable rule of evidence without analyzing all other potential bases of exclusion," noting, as an example, that Rule 403 affords ample authority for affirming a district court exclusion of polygraph evidence. *United States v. Benavidez-Benavidez*, 217 F.3d 720, 724-25 (9th Cir. 2000). Consistent with that view, the Ninth Circuit in *United States v. Seideman*, 485 F. App'x 190, 193-94 (9th Cir. June 27, 2012), upheld a district court's decision to exclude evidence that another suspect had failed a polygraph examination "because it determined that the evidence would confuse the jury, would take too long to explain, and could be misinterpreted by the jury."

This Court has similarly recognized that under the flexible *Daubert* standard, which does not categorically preclude the admission of evidence, "a number of district courts have . . . excluded polygraph evidence at trial, and the Ninth Circuit

3

has affirmed those rulings." *United States v. Kealoha*, 2019 WL 847728, at *2 (D. Haw. Feb. 21, 2019) (citing cases).[2]

  3. This Court should now rule that the defense may not admit the results of polygraph examinations into evidence, and may not use those results to impeach any witnesses who testify. As the Supreme Court has recognized, "certain doubts and uncertainties plague even the best polygraph exams." *Scheffer*, 523 U.S. at 312. Allowing the defense to admit or refer to polygraph results, therefore, would present the jury with information of doubtful reliability. And it would risk encouraging the jury to give undue weight to those results, for "by its very nature, polygraph evidence may diminish the jury's role in making credibility determinations," as it may have an "aura of infallibility" that is not present in a jury's consideration of witness testimony, which is subject to cross-examination. *Id.* at 313. The government therefore would be required to spend considerable time explaining to the jury the limitations in polygraph examinations, the reasons why those results should not be given the weight they might appear to warrant, and

---

[2] The question in the *Kealoha* order was whether it was inappropriate to mention polygraph information even in the context of a grand jury proceeding, where the Federal Rules of Evidence would not stand as an obstacle to doing so. The district court did not resolve that question, but instead held that even if improper, the use of the evidence would not rise to the level of prosecutorial misconduct. *Id.* at *3; *accord United States v. Messina*, 131 F.3d 36, 42 (2d Cir. 1997) (affirming exclusion of polygraph evidence from sentencing, another context in which the Federal Rules of Evidence do not apply).

delving into the details of questions that were asked and the significance of the answers that were given and found deceptive (where that was the case).  And in order for the jury to have proper context, it would be necessary to allow the government to introduce evidence that one of its most significant cooperating witnesses received a result showing *no* deception—which would further confuse and waste the jury's time, because it would leave the defense in the position of having to explain to the jury why some polygraph results should be given weight while others not.

Finally, polygraph results are inadmissible under Federal Rule of Evidence 608(b).  "A polygraph examination result is purported to be a measure of a specific instance of dishonesty.  As such it is inadmissible extrinsic evidence." *United States v. Pitner*, 969 F. Supp. 1246, 1253 (W.D. Wash. 1997).

4.  For the above reasons, the government respectfully requests that the Court grant this motion *in limine*.

DATED: November 13, 2023, at Honolulu, Hawaii.

    CLARE E. CONNORS
    United States Attorney
    District of Hawaii

    By */s/ Mark A. Inciong*
       MICHAEL D. NAMMAR
       MARK A. INCIONG
       W. KEAUPUNI AKINA
       Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that, on the date noted below, the true and correct copy of the foregoing was served on the following at their last known address:

Served Electronically through CM/ECF:

| | |
|---|---|
| Lynn Panagakos, Esq. <br> Michael Jerome Kennedy, Esq. | Attorneys for Defendant <br> MICHAEL J. MISKE, JR. |
| Walter J. Rodby, Esq. <br> Terri L. Fujioka-Lilley, Esq. | Attorneys for Defendant <br> JOHN B. STANCIL |
| Marcia Morrissey, Esq. <br> Donovan Odo, Esq. | Attorneys for Defendant <br> DELIA FABRO-MISKE |
| William A. Harrison, Esq. | Attorney for Defendant <br> JASON K. YOKOYAMA |

DATED: November 13, 2023, at Honolulu, Hawaii.

/s/ Tiani Kaneakua
U.S. Attorney's Office
District of Hawaii