CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

MICHAEL D. NAMMAR
MARK A. INCIONG    CA BAR #163443
W. KEAUPUNI AKINA #11565
Assistant U.S. Attorneys
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email:    Michael.Nammar@usdoj.gov
          Mark.Inciong@usdoj.gov
          KeAupuni.Akina@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CR. NO. 19-00099 DKW-KJM |
|---|---|
| Plaintiff, | UNITED STATES' SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION *IN LIMINE* FOR RULING ON STATUTORY HEADINGS IN RACKETEERING CONSPIRACY COUNT [ECF NO. 1048]; CERTIFICATE OF SERVICE |
| vs. | |
| MICHAEL J. MISKE, JR., (01) aka "Bro," | |
| JOHN B. STANCIL, (02) | |
| DELIA FABRO-MISKE, and (12) | |
| JASON K. YOKOYAMA, (13) | |
| Defendants. | |

UNITED STATES' SUPPLEMENTAL BRIEFING IN
SUPPORT OF MOTION *IN LIMINE* FOR RULING ON STATUTORY
HEADINGS IN RACKETEERING CONSPIRACY COUNT [ECF NO. 1048]

I.  **BACKGROUND**

Counts 21 and 22 of the Third Superseding Indictment ("TSI") charge Miske with substantive violations of 18 U.S.C. § 1512(c)(2). Count 1, likewise, charges Miske, Delia Fabro-Miske, and others with conspiring to commit a pattern of racketeering activity, and alleges that, they agreed to carry out the obstructive criminal activity detailed in Counts 21 and 22, including to violate § 1512. Evidence relating to the genesis, preparation, and execution of that criminal activity is directly admissible to prove up Counts 1, 21, and 22. To prevail on Count 1, the United States must establish that Miske knowingly agreed with another that a co-conspirator would knowingly participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. The motive and preparatory acts underpinning the conduct alleged in Counts 21 and 22, and the acts taken to complete that agreement (i.e., filing fraudulent documents) are direct evidence of the agreement charged in Count 1, and independently admissible because they are inextricably intertwined.

  **A. Evidence and acts relevant to Count 21.**

Count 21 concerns a fraudulent character letter, purportedly authored and signed by K.N., filed with this Court on August 11, 2020. As alleged in the TSI, the criminal agreement and acts that resulted in that filing date back to at least 2017. At trial, to prove up Count 21, *inter alia*, the United States will introduce:

- Testimony from Individual A that she, at Miske's behest, authored the

1

fraudulent K.N. letter in 2017 and—using a throwaway Google account ("natasha.rae.smith808") registered under a fictitious name ("Natasha Smith")—emailed the fraudulent K.N. letter to Miske (via Google account "mmaloha808") on August 29, 2018. Individual A will testify about communications with Miske, Miske's attorneys, Fabro-Miske, and others concerning the K.N. letter, and her role in Miske's plan to obtain multiple character letters in 2017, ahead of anticipated federal charges. Individual A will testify that Miske was adamant that—based on his lawyers' advice—he needed at least one character letter from someone who did not work for him, and that impostering K.N. was a logical choice. Individual A will also testify that Miske was exceptionally concerned about obtaining pretrial release.

- Digital evidence obtained from Google, including an email sent from Individual A to Miske on August 29, 2018 at 7:43 a.m. Attached to that email is a draft of the fraudulent K.N. letter, saved as a Microsoft Word "DOCX" file (entitled "kurt-letter.docx"). A forensic examiner will testify that the metadata for "kurt-letter.docx" lists Individual A as the "Author" and that it was created on September 15, 2017.



- Testimony from Individual A that, later on August 29, 2018, she sent a PDF version of the fraudulent K.N. letter to Miske, which at that time contained a date and complimentary close with K.N.'s name, but no signature.
- Digital evidence from Google, including an email sent from Individual A

using that same throwaway Google account to Miske at 12:26 p.m. on August 29, 2018, attaching an Adobe PDF file (entitled "kurt-letter.pdf"). A forensic examiner will testify that the metadata for "kurt-letter.pdf" lists Individual A as the "Author" and that it was created on August 29, 2018 at 12:25 p.m.



- Digital evidence obtained from Google, including an email sent from Miske (using the Google account "mmaloha808") to Fabro-Miske (using the Google account "delia.fabro") on August 29, 2018 at 2:05 p.m., attaching the Adobe PDF file (entitled "kurt-letter.pdf").



- Digital evidence obtained from Google, including an email sent from Fabro-

3

Miske (using the Google account "delia.fabro") to Miske's attorneys on August 29, 2018 at 3:15 p.m. attaching an Adobe PDF file (entitled "Kurt.pdf"). A forensic examiner will testify that the metadata for "Kurt.pdf" shows it was created using a Konica Minolta bitzhub C368 (consistent with one owned by KTPC) on August 29, 2018 at 3:13 p.m. and that "Kurt.pdf" contained a signature for K.N. that did not appear in the "kurt-letter.pdf" file sent from Miske to Fabro-Miske at 2:05 p.m.



- Digital evidence from computers seized during a search of the KTPC offices. A forensic examiner will testify about computer logs reflecting web searches for examples of K.N.'s signature, attributable to Fabro-Miske.

- Witness testimony from K.N., who will testify that he did not author, approve, or sign the character letter attributed to him.

B. **Evidence and acts relevant to Count 22.**

Count 22 concerns a doctored character letter, purportedly authored and signed by L.K., also filed with this Court on August 11, 2020. The criminal agreement and acts underlying the doctored L.K. letter dates back to at least 2019. At trial, to prove up Count 22, *inter alia*, the United States will introduce:

4

- Witness testimony from Individual A, who will testify that, on January 2, 2019, she made edits to a draft of the L.K. letter, saved it as a Microsoft Word "DOCX" file (entitled "Letter – Larry.docx") and emailed that doctored version to Fabro-Miske later on January 2, 2019, after discussing it with Miske. Individual A will also testify about communications with Miske, Miske's attorneys, Fabro-Miske, and others concerning the fraudulent L.K. letter, and her role in Miske's effort to obtain character letters, in 2017, in advance of anticipated federal criminal charges.

- Digital evidence from Google, including email traffic between Individual A and Fabro-Miske, other employees of KTPC, and Miske's attorneys, related to the fraudulent L.K. letter. A forensic examiner will testify that the metadata for "Letter – Larry.docx" shows Individual A edited the file on January 2, 2019, and that the emails in January 2019 discuss communications between Miske and Individual A concerning the fraudulent L.K. letter.



- A forensic examiner will testify that, on January 7, 2019, Individual A's Google account received an email attaching an Adobe PDF file (entitled "SKM_C36819010709511.pdf") which contained a signed version of the

5

doctored L.K. letter. The forensic examiner will also testify that the metadata for "SKM_C36819010709511.pdf" shows it was created using a Konica Minolta bitzhub C368 (consistent with one owned by KTPC) and contained a signature for L.K. that did not appear in the "Letter – Larry.docx" edited by Individual A on January 2, 2019. The forensic examiner will also testify that, on January 7, 2019, Individual A emailed the doctored L.K. letter (renamed from "SKM_C36819010709511.pdf" to "Larry-Signed.pdf") to Miske's attorneys, and on February 4, 2019, forwarded the email to Fabro-Miske.



## II.   ARGUMENT

Counts 21 and 22 allege obstructive criminal activity by Miske and Individual A from (1) "on or about September 15, 2017" (Count 21) and (2) "on or about January 2, 2019" (Count 2) and "continuing to on or about August 11, 2020." Acts within those dates, and beyond it (within reason[1]), are fair game at trial.

---

[1] *See generally United States v. Loya*, 807 F.2d 1483, 1493-94 (9th Cir. 1987) (approving "on or about" jury instruction).

The evidence detailed above—as well as evidence concerning the filing and use of the fraudulent character letters—falls squarely within the charged dates and is directly relevant and admissible to prove up Counts 21 and 22.

This same body of evidence, however, is also directly admissible to prove up the racketeering conspiracy charged in Count 1 of the TSI, which is alleged to have spanned from "at least in or about the late 1990s, up to and including in or about June 2020." *See* Dkt. No. 673 at PageID.4447.[2]

Significantly, the evidence detailed above occurred **during** the timeframe of the conspiracy charged in Count 1. That evidence shows—as alleged in the TSI— the "Means and Methods of the Miske Enterprise." *See id.* at PageID.4444-4448 (paragraph "6(g)" detailing the conduct of Miske, Fabro-Miske, Individual A, and others pertinent to Counts 21 and 22). That same evidence also demonstrates— again, as alleged in the TSI—that the conspirators agreed they would, as part of their broader criminal agreement to violate the racketeering laws of the United States, collaborate to violate § 1512. *See id.* at PageID.4450 (paragraph "7(r)" describing agreement to violate § 1512). In other words, the Grand Jury determined—in no uncertain terms based on the TSI—that the conduct giving rise to Counts 21 and 22 *was* a part of the racketeering conspiracy charged in Count 1. Accordingly, the United States is entitled to put on this evidence to prove up Count 1, both as a

---

[2] Compared to a conspiracy spanning over two decades, a two-month divergence is insignificant.

7

"Means and Methods of the Miske Enterprise" and an example of the agreed-upon racketeering activity. It is directly related to the charged crime and therefore admissible under Rule 402. *See, e.g., United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004) ( "[E]ach action was 'inextricably intertwined' with the conspiracy, and therefore not subject to Rule 404(b), because each [action] occurred within the temporal scope of the conspiracy and comprised the conspiracy."); *United States v. Rodriguez*, 971 F.3d 1007, 1013-14 (9th Cir. 2020) (pattern of racketeering activity extends to conspiracies, even if no racketeering offense is completed).

The story is simple: Miske, by 2017, knew he was the target of a major federal criminal investigation. At the behest of his attorneys, he enlisted Individual A to spearhead a campaign to obtain character letters, which Miske's attorneys would then use to argue for pretrial release if he were charged. *See, e.g., supra* Aug. 29, 2018 7:43 a.m. email (Individual A describing framework for a character letter). The evidence at trial will demonstrate that Miske sought pretrial release for obvious reasons, including maintaining the operation of KTPC, his flagship racket. And rather than scramble and get the needed character letters after being indicted and detained, Miske sought them in advance. But Miske could not get the type of letters he needed through lawful means. So, while the Miske Enterprise was in full operation, Miske enlisted help from his longtime criminal confederates—including co-defendant Fabro-Miske and co-conspirator Individual A—and worked with them

8

to create fraudulent character letters that suited his needs.

Relevant agreed-upon "acts" to accomplish Miske's goal of corruptly obtaining pretrial release (all falling **within** the timeframe of the charged conspiracy) include: (1) Miske's extensive oral and written communications with Individual A and Fabro-Miske about the fraudulent letters; *see, e.g., supra* Aug. 29, 2018 7:43 a.m. email; (2) Miske's use of the "mmaloha808" Google account to pass the fraudulent K.N. letter from Individual A to Fabro-Miske and then to Miske's attorneys; *see, e.g., supra* Aug. 29, 2018 2:05 p.m. email; (3) Individual A's creation, editing, and provision of the fraudulent K.N. letter between 2017 and 2019 (multiple acts detailed above); (4) Individual A's editing and provision of the doctored L.K. letter in 2019 (multiple acts detailed above); (5) Fabro-Miske searching for, and applying, a fraudulent signature to the fraudulent K.N. letter and then sending it to Miske's attorneys (multiple acts detailed above); and (6) Individual A working with KTPC employees, including S.D., to apply a fraudulent signature to the doctored L.K. letter, and then sending it to Miske's attorneys (multiple acts detailed above).

These criminal acts all occurred **during** the charged racketeering conspiracy, are alleged as part of the conspiracy, and are therefore admissible under Rule 402.

In addition to being charged conduct, this evidence—including evidence of the fraudulent letters being filed with this Court—is admissible because it is inextricably intertwined with the criminal activity charged in Count 1. *See United*

9

*States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012) (affirming admission of "inextricably intertwined" evidence to "permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime," including evidence that "may constitute a part of the transaction that serves as the basis for the criminal charge"); *United States v. Mundi*, 892 F.2d 817, 820 (9th Cir. 1989) (evidence of alleged fraudulent acts against multiple victims named in original indictment remained admissible after superseding indictment named only one victim); *United States v. Lillard*, 354 F.3d 850, 854-55 (9th Cir. 2003) (evidence of uncharged theft inextricably intertwined with conspiracy charge); *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) ("When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself."); *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995) (jury "cannot be expected to make its decision in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the charge") (cleaned up).

Introducing this evidence is necessary to tell a coherent story regarding the full scope of the racketeering conspiracy, including Miske's operation and management of the Miske Enterprise, which is an element the United States must establish. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) ("[A] prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.").

DATED: December 29, 2023, at Honolulu, Hawaii.

                                      CLARE E. CONNORS
                                      United States Attorney
                                      District of Hawaii

                    By     */s/ Mark A. Inciong*
                                      MICHAEL D. NAMMAR
                                      MARK A. INCIONG
                                      W. KEAUPUNI AKINA
                                      Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I hereby certify that, on the date noted below, the true and correct copy of the foregoing was served on the following at their last known address:

Served Electronically through CM/ECF:

| | |
|---|---|
| Lynn Panagakos, Esq.<br>Michael Jerome Kennedy, Esq. | Attorneys for Defendant<br>MICHAEL J. MISKE, JR. |
| Walter J. Rodby, Esq.<br>Caroline Elliot, Esq. | Attorneys for Defendant<br>JOHN B. STANCIL |
| Marcia Morrissey, Esq.<br>Donovan Odo, Esq. | Attorneys for Defendant<br>DELIA FABRO-MISKE |
| William A. Harrison, Esq. | Attorney for Defendant<br>JASON K. YOKOYAMA |

DATED: December 29, 2023, at Honolulu, Hawaii.

/s/ Tiani Kaneakua
U.S. Attorney's Office
District of Hawaii