```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF HAWAII

 3
     UNITED STATES OF AMERICA,    )    CRIMINAL NO. 19-00099-DKW
 4                                )
                Plaintiff,        )    Honolulu, Hawaii
 5                                )
           vs.                    )    June 9, 2021
 6                                )
     NORMAN L. AKAU III, (09)     )    CHANGE OF PLEA
 7                                )
                Defendant.        )
 8   _____  )

 9
          TRANSCRIPT OF PROCEEDINGS VIA VIDEO TELECONFERENCE
10           BEFORE THE HONORABLE DERRICK K. WATSON,
                UNITED STATES DISTRICT COURT JUDGE
11

12   APPEARANCES:

13

14   For the Plaintiff:          MARK INCIONG, ESQ.
                                  Office of the United States Attorney
15                                PJKK Federal Building
                                  300 Ala Moana Boulevard, Suite 6100
16                                Honolulu, Hawaii  96850

17
     For the Defendant:          RONALD RICHARDS, ESQ.
18                                Law Offices of Ronald Richards &
                                  Associates, APC
19                                P. O. Box 11480
                                  Beverly Hills, CA 90213
20

21   Official Court Reporter:    Gloria T. Bediamol, RPR RMR CRR FCRR
                                  United States District Court
22                                300 Ala Moana Boulevard
                                  Honolulu, Hawaii 96850
23

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

| | | |
|---|---|---|
| | 1 | June 9, 2021                                          10:06 a.m. |
| 10:06AM | 2 | THE CLERK:  Criminal Number 19-00099-DKW, United |
| 10:07AM | 3 | States of America versus Defendant (09) Norman L. Akau III. |
| 10:07AM | 4 | This case has been called for a change of plea |
| 10:07AM | 5 | hearing. |
| 10:07AM | 6 | Counsel, please make your appearances for the record. |
| 10:07AM | 7 | MR. INCIONG:  Good morning, Your Honor.  Mark Inciong |
| 10:08AM | 8 | for the United States. |
| 10:08AM | 9 | THE COURT:  Mr. Inciong, good morning. |
| 10:08AM | 10 | MR. RICHARDS:  Good morning, Your Honor.  Ronald |
| 10:08AM | 11 | Richards taking the plea for the defendant Norman L. Akau III |
| 10:08AM | 12 | who is present and in custody. |
| 10:08AM | 13 | THE COURT:  Mr. Richards, good morning.  And, |
| 10:08AM | 14 | Mr. Akau, good morning to you, sir. |
| 10:08AM | 15 | THE DEFENDANT:  Good morning, sir. |
| 10:08AM | 16 | THE COURT:  We're here this morning because, as I |
| 10:08AM | 17 | understand it, the defendant Mr. Akau wishes to plead guilty to |
| 10:08AM | 18 | Count 1 of the June 18, 2020 superseding indictment, and that |
| 10:08AM | 19 | would be pursuant to a plea agreement with the government. |
| 10:08AM | 20 | Counsel have advised that Mr. Akau wishes to proceed |
| 10:08AM | 21 | this morning by video and consents to do so.  As a result, |
| 10:08AM | 22 | there are a few things that I need to get on the record before |
| 10:08AM | 23 | we go any further. |
| 10:08AM | 24 | First of all, Mr. Akau, pursuant to Section 15002 of |
| 10:08AM | 25 | the CARES Act, the Coronavirus Aid Relief and Economic Security |

| 10:08AM | 1 | Act, there are certain circumstances in which a defendant may |
| 10:09AM | 2 | consent, after consulting with counsel, to proceed with his |
| 10:09AM | 3 | change of plea hearing. |
| 10:09AM | 4 | On May 6th of this year the chief judge for our |
| 10:09AM | 5 | district found that change of plea hearings such as this one, |
| 10:09AM | 6 | originating with the defendant incarcerated at FDC, Judge |
| 10:09AM | 7 | Seabright found that those hearings cannot be conducted in |
| 10:09AM | 8 | person without seriously jeopardizing public health and safety. |
| 10:09AM | 9 | Judge Seabright made that finding pursuant to Section |
| 10:09AM | 10 | 15002(b)(2) of the CARES Act. |
| 10:09AM | 11 | Mr. Akau, your counsel has advised that you consent to |
| 10:09AM | 12 | proceed with this hearing by video; I would like to get that |
| 10:09AM | 13 | consent again on the record before we proceed. |
| 10:09AM | 14 | Mr. Akau, can you confirm, sir, that you consulted |
| 10:09AM | 15 | with Mr. Richards concerning whether or not to proceed with |
| 10:09AM | 16 | this plea hearing this morning by video from FDC rather than |
| 10:09AM | 17 | through an in-person appearance in court? |
| 10:09AM | 18 | THE DEFENDANT:  I have consented, Your Honor. |
| 10:09AM | 19 | THE COURT:  Okay, and have you consulted with |
| 10:09AM | 20 | Mr. Richards regarding that? |
| 10:10AM | 21 | THE DEFENDANT:  Yes, I have. |
| 10:10AM | 22 | THE COURT:  Mr. Richards, do you concur that your |
| 10:10AM | 23 | consultation with Mr. Akau has included whether or not to |
| 10:10AM | 24 | proceed with this hearing by video? |
| 10:10AM | 25 | MR. RICHARDS:  You mean, you want me to -- my only |

10:10AM   1   concern, Your Honor, is I don't want to waive any privilege

10:10AM   2   with Mr. Akau, but I could tell you that we discussed generally

10:10AM   3   the option of doing the change of plea and that the video is an

10:10AM   4   option that he wants to utilize because he doesn't want to go

10:10AM   5   into quarantine and he's happy with doing it this way.

10:10AM   6        THE COURT:  Mr. Akau, having so consulted with

10:10AM   7   Mr. Richards, do you, sir, consent to proceed with your change

10:10AM   8   of plea hearing by video?

10:10AM   9        THE DEFENDANT:  Yes, Your Honor, I consent.

10:10AM  10        THE COURT:  Thank you.  In addition, the Court finds

10:10AM  11   that this change of plea hearing cannot be further delayed

10:10AM  12   without serious harm to the interest of justice.  In particular

10:10AM  13   this very pandemic that has been with us has been with us

10:11AM  14   unfortunately for going on a year and a half now.  As

10:11AM  15   mentioned, the chief judge of this district has already found

10:11AM  16   in a series of CARES Act orders, the most recent one being on

10:11AM  17   May 6th of this year, that change of plea hearings like this

10:11AM  18   one cannot proceed in person without seriously jeopardizing

10:11AM  19   public health and safety.

10:11AM  20        Mr. Akau is incarcerated at FDC Honolulu.  If he were

10:11AM  21   to appear in person, both Mr. Akau as well as his escorts would

10:11AM  22   face an enhanced risk presented by the current pandemic.  And

10:11AM  23   Mr. Akau would also, as Mr. Richards just referenced, be

10:11AM  24   required by FDC Honolulu procedures to quarantine upon return.

10:11AM  25   Such a quarantine would limit, among other things, his

| | | |
|---|---|---|
| 10:11AM | 1 | communication with others to include counsel. |
| 10:11AM | 2 | In addition, there is limited programming available to |
| 10:11AM | 3 | pretrial detainees like Mr. Akau.  As a result, until he is put |
| 10:11AM | 4 | into the sentencing queue and is ultimately sentenced, he will |
| 10:12AM | 5 | not be eligible for additional programming that could result in |
| 10:12AM | 6 | a number of changes beneficial to him, to include the possible |
| 10:12AM | 7 | early release as well as a lower security classification. |
| 10:12AM | 8 | In addition, the Court finds that delay would |
| 10:12AM | 9 | eventually result in a backlog of criminal matters on this |
| 10:12AM | 10 | Court's docket, which is precisely what did occur last year |
| 10:12AM | 11 | when the pandemic -- the same pandemic closed our courthouse |
| 10:12AM | 12 | for several months. |
| 10:12AM | 13 | Mr. Akau, before accepting your plea, there are a few |
| 10:12AM | 14 | questions that I need to ask you to ensure that your decisions |
| 10:12AM | 15 | are knowing and voluntary.  If I ask you anything at all that |
| 10:12AM | 16 | is confusing or ambiguous to you, it's certainly not my intent |
| 10:12AM | 17 | to do that, but if I do please point that out to me, and I'll |
| 10:12AM | 18 | do my very best to ask you a better question.  Do you |
| 10:12AM | 19 | understand that, sir? |
| 10:12AM | 20 | THE DEFENDANT:  Yes, Your Honor. |
| 10:12AM | 21 | THE COURT:  Ms. Kimura, would you please swear the |
| 10:12AM | 22 | defendant? |
| 10:12AM | 23 | THE CLERK:  Please raise your right hand. |
| 10:12AM | 24 | (The defendant was sworn to answer truthfully.) |
| 10:12AM | 25 | |

| | | |
|---|---|---|
| 10:13AM | 1 | MR. RICHARDS:  Is it me or is someone freezing? |
| 10:14AM | 2 | THE CLERK:  The judge is frozen. |
| 10:14AM | 3 | MR. RICHARDS:  I'm frozen? |
| 10:14AM | 4 | THE CLERK:  No, the judge is.  We will let him know. |
| 10:14AM | 5 | Thank you. |
| 10:14AM | 6 | MR. RICHARDS:  Believe me, I've frozen plenty of |
| 10:14AM | 7 | times.  I made sure that I'm in the highest internet, so I was |
| 10:14AM | 8 | like it can't be me. |
| 10:14AM | 9 | THE COURT:  All right.  Did I lose connection here? |
| 10:14AM | 10 | THE CLERK:  Yes.  You're back on, Judge. |
| 10:14AM | 11 | THE COURT:  I apologize for that.  I didn't realize |
| 10:14AM | 12 | that I was the one I guess frozen.  You all looked frozen to |
| 10:14AM | 13 | me, and then I realized that -- |
| 10:14AM | 14 | MR. RICHARDS:  The screen looks ten years younger. |
| 10:14AM | 15 | THE COURT:  Yeah.  Well, then I realized that it |
| 10:14AM | 16 | couldn't be the five of you, it must be the one of me; so I |
| 10:14AM | 17 | logged out and reconnected.  I apologize.  I'm in the |
| 10:14AM | 18 | courthouse, so it's not a personal cellular connection or WiFi |
| 10:14AM | 19 | connection that is to blame.  Hopefully we won't encounter that |
| 10:15AM | 20 | again. |
| 10:15AM | 21 | So as I was saying -- Mr. Akau, before voluntary -- |
| 10:15AM | 22 | (Audio transmission gap). |
| 10:20AM | 23 | Let's roll.  Hopefully this will last. |
| 10:20AM | 24 | Mr. Akau, can you hear me, sir? |
| 10:20AM | 25 | THE DEFENDANT:  Yes, I can Your Honor. |

| | | |
|---|---|---|
| 10:20AM | 1 | THE COURT:  Mr. Richards, are you there? |
| 10:20AM | 2 | MR. RICHARDS:  I am, Your Honor. |
| 10:20AM | 3 | THE COURT:  Thank you your for your patience. |
| 10:20AM | 4 | Mr. Akau, before accepting your plea, as I was |
| 10:20AM | 5 | hopefully saying earlier, there are a few questions that I need |
| 10:20AM | 6 | to ask you this morning, and that's to ensure that your |
| 10:20AM | 7 | decisions are knowing and voluntary.  If I ask you anything at |
| 10:20AM | 8 | all that is ambiguous or that is unclear to you in any fashion, |
| 10:21AM | 9 | please point that out to me, and I'll do my best to correct |
| 10:21AM | 10 | that; okay? |
| 10:21AM | 11 | THE DEFENDANT:  Yes.  Thank you, Your Honor. |
| 10:21AM | 12 | THE COURT:  Ms. Kimura, would you then swear the |
| 10:21AM | 13 | defendant in? |
| 10:21AM | 14 | THE CLERK:  Please raise your right hand. |
| 10:21AM | 15 | (The defendant was sworn to answer truthfully.) |
| 10:21AM | 16 | THE COURT:  Mr. Akau, please understand that you have |
| 10:21AM | 17 | now taken an oath to answer my questions this morning |
| 10:21AM | 18 | truthfully.  And if you do anything other than that, you could |
| 10:21AM | 19 | be subjecting yourself to additional charges.  Do you |
| 10:21AM | 20 | understand that, sir? |
| 10:21AM | 21 | THE DEFENDANT:  Yes, Your Honor. |
| 10:21AM | 22 | THE COURT:  Please state your full name then. |
| 10:21AM | 23 | THE DEFENDANT:  Norman Lani Akau, III. |
| 10:21AM | 24 | THE COURT:  How old are you, sir? |
| 10:21AM | 25 | THE DEFENDANT:  I'm 49 years old. |

| | | |
|---|---|---|
| 10:21AM | 1 | THE COURT:  What is the highest level of education |
| 10:22AM | 2 | that you have achieved? |
| 10:22AM | 3 | THE DEFENDANT:  High school diploma, 12th grade. |
| 10:22AM | 4 | THE COURT:  Who is your most recent employer? |
| 10:22AM | 5 | THE DEFENDANT:  Magnum PI. |
| 10:22AM | 6 | THE COURT:  Magnum PI, the TV show? |
| 10:22AM | 7 | THE DEFENDANT:  Yes, Your Honor. |
| 10:22AM | 8 | THE COURT:  What did you do?  Were you a part of the |
| 10:22AM | 9 | production team? |
| 10:22AM | 10 | THE DEFENDANT:  I was part of the production team in |
| 10:22AM | 11 | management. |
| 10:22AM | 12 | THE COURT:  And you understand, speak, and I assume |
| 10:22AM | 13 | write English all just fine as a high school graduate; is that |
| 10:22AM | 14 | fair? |
| 10:22AM | 15 | THE DEFENDANT:  Yes, I do.  I read and speak English |
| 10:22AM | 16 | well, Your Honor. |
| 10:22AM | 17 | THE COURT:  And have you taken any type -- I know |
| 10:22AM | 18 | you're in custody, but have you taken any type of drugs, legal |
| 10:22AM | 19 | or illegal, within the past 48 hours? |
| 10:22AM | 20 | THE DEFENDANT:  I have not.  No, sir. |
| 10:22AM | 21 | THE COURT:  And have you consumed any alcohol, |
| 10:22AM | 22 | Mr. Akau, in the last 24 hours? |
| 10:22AM | 23 | THE DEFENDANT:  I have not, Your Honor. |
| 10:23AM | 24 | THE COURT:  Is it fair to say then that you are sober |
| 10:23AM | 25 | and thinking clearly this morning? |

10:23AM  1            THE DEFENDANT:  Yes, Your Honor, I am.

10:23AM  2            THE COURT:  What is your understanding then of the

10:23AM  3    purpose of this morning's hearing?

10:23AM  4            THE DEFENDANT:  I am to have a change of plea from not

10:23AM  5    guilty to guilty for the charge of Count 1, conspiracy for

10:23AM  6    racketeering.

10:23AM  7            THE COURT: And have you had enough time, sir, to

10:23AM  8    discuss that decision whether or not to plead guilty as well as

10:23AM  9    this case generally with Mr. Richards?

10:23AM  10           THE DEFENDANT:  Yes, Your Honor, I have.

10:23AM  11           THE COURT:  And are you satisfied with his

10:23AM  12   representation of you thus far in this case?

10:23AM  13           THE DEFENDANT:  Yes, sir, I'm satisfied.

10:23AM  14           THE COURT:  Mr. Richards, do you have any reason to

10:23AM  15   doubt Mr. Akau's capacity or competence to enter a knowing and

10:23AM  16   voluntary plea this morning?

10:23AM  17           MR. RICHARDS:  No, and I can tell you his penmanship

10:23AM  18   is the best that I've seen in almost 28 years.  When he writes

10:24AM  19   me a letter, it's outstanding.

10:24AM  20           THE COURT:  Looks like calligraphy, huh?

10:24AM  21           MR. RICHARDS:  Honestly I couldn't write that well if

10:24AM  22   you gave me a week.  It's perfectly printed.

10:24AM  23           THE COURT:  Good to hear.

10:24AM  24           Mr. Akau, my understanding then is you are pleading

10:24AM  25   guilty to Count 1 this morning, as you just mentioned yourself

| | | |
|---|---|---|
| 10:24AM | 1 | a minute ago.  Count 1 charges you with conspiring to violate |
| 10:24AM | 2 | the racketeering laws of the United States in violation of |
| 10:24AM | 3 | Title 18 of the United States Code, Section 1962D, as in David. |
| 10:24AM | 4 | Have you discussed this particular charge and |
| 10:24AM | 5 | allegations behind that charge with counsel? |
| 10:24AM | 6 | THE DEFENDANT:  Yes, Your Honor, I have. |
| 10:24AM | 7 | THE COURT: And based on your own review and |
| 10:24AM | 8 | consultation with counsel, are you confident that you |
| 10:24AM | 9 | understand the charges brought against you? |
| 10:24AM | 10 | THE DEFENDANT:  Yes, I do, Your Honor.  I understand. |
| 10:24AM | 11 | THE COURT:  And do you have any questions, Mr. Akau, |
| 10:24AM | 12 | with respect to any of the charges or allegations? |
| 10:24AM | 13 | THE DEFENDANT:  I do not at this time, Your Honor. |
| 10:25AM | 14 | THE COURT:  Can you tell me, Mr. Akau, if anyone has |
| 10:25AM | 15 | threatened, forced or coerced you into pleading guilty? |
| 10:25AM | 16 | THE DEFENDANT:  No one has done any of those things. |
| 10:25AM | 17 | I made this choice on my own free will, Your Honor. |
| 10:25AM | 18 | THE COURT:  And to your knowledge, Mr. Akau, has |
| 10:25AM | 19 | anyone threatened, forced or coerced someone close to you, |
| 10:25AM | 20 | meaning a close friend or relative, in order to get you to |
| 10:25AM | 21 | plead guilty? |
| 10:25AM | 22 | THE DEFENDANT:  No one has, Your Honor. |
| 10:25AM | 23 | THE COURT:  Has anyone made any promises to you in |
| 10:25AM | 24 | order to get you to plead guilty, other than the promises that |
| 10:25AM | 25 | the government has made in its written plea agreement with you? |

| 10:25AM | 1 | THE DEFENDANT: No one has made any promises, Your |
|---|---|---|
| 10:25AM | 2 | Honor. |
| 10:25AM | 3 | MR. RICHARDS:  Your Honor -- |
| 10:25AM | 4 | THE COURT:  Are you pleading guilty then, Mr. Akau, |
| 10:25AM | 5 | because you are guilty of the conduct alleged in Count 1? |
| 10:25AM | 6 | THE DEFENDANT:  Yes, Your Honor, that is true.  I'm |
| 10:26AM | 7 | pleading guilty because -- |
| 10:26AM | 8 | THE COURT:  Because what?  I missed the last part. |
| 10:26AM | 9 | THE DEFENDANT:  (Inaudible) |
| 10:26AM | 10 | THE COURT:  I'm sorry, I missed that still. |
| 10:26AM | 11 | THE DEFENDANT:  I said I'm pleading guilty to that |
| 10:26AM | 12 | charge for I'm guilty of it, Your Honor. |
| 10:26AM | 13 | THE COURT:  Mr. Inciong, would you then please |
| 10:26AM | 14 | describe the potential penalties that Mr. Akau faces for |
| 10:26AM | 15 | pleading guilty to this particular count? |
| 10:26AM | 16 | MR. INCIONG:  Yes, Your Honor.  The maximum penalties |
| 10:26AM | 17 | that apply to Count 1 of the superseding indictment to which |
| 10:26AM | 18 | Mr. Akau is pleading is a term of imprisonment of not more than |
| 10:26AM | 19 | 20 years.  There is also a potential fine of up to $250,000. |
| 10:26AM | 20 | In addition, there is a term of supervised release of up to |
| 10:26AM | 21 | three years that would be imposed.  Finally, there is a $100 |
| 10:26AM | 22 | mandatory special assessment that would be assessed. |
| 10:26AM | 23 | THE COURT:  Is there any forfeiture component to this |
| 10:27AM | 24 | particular plea? |
| 10:27AM | 25 | MR. INCIONG:  Your Honor, the plea agreement does |

10:27AM  1    generally call for forfeiture, but at this time there are no

10:27AM  2    applicable items for forfeiture in regard to Mr. Akau.

10:27AM  3            THE COURT:  All right.  Mr. Richards, do you agree

10:27AM  4    with the potential penalties that your client faces for

10:27AM  5    pleading guilty to Count 1 as just described by the

10:27AM  6    government's attorney?

10:27AM  7            MR. RICHARDS:  I do, but at the appropriate time, Your

10:27AM  8    Honor.  I just want to address the portion of the plea

10:27AM  9    agreement and the factual basis that I believe would be --

10:27AM  10   that I want to make sure it's segregated in the record with

10:27AM  11   respect to paragraph 21E with respect to sentencing.  There's

10:27AM  12   some statements which are part of the plea agreement that were

10:27AM  13   provided pursuant to a cooperation agreement; so whatever the

10:28AM  14   appropriate time is, I'll point that out to the Court.

10:28AM  15           THE COURT:  All right.  And we are certainly going to

10:28AM  16   get into the details of the plea agreement in just a minute.

10:28AM  17   That would be the appropriate time.

10:28AM  18           Mr. Akau, do you, sir, understand the potential

10:28AM  19   penalties that you face for pleading guilty to Count 1 as just

10:28AM  20   described by AUSA Inciong?

10:28AM  21           THE DEFENDANT:  Yes, Your Honor, I understand fully.

10:28AM  22           THE COURT:  Then I'll turn back to Mr. Inciong.  I'm

10:28AM  23   going to turn back to him in just a minute to summarize the

10:28AM  24   essential terms of the plea agreement.  Before we get there, I

10:28AM  25   want to be sure, Mr. Akau, that you confirm you've entered into

10:28AM  1    a plea agreement with the government, have you not?

10:28AM  2              THE DEFENDANT:  Yes, Your Honor, I have.

10:28AM  3              THE COURT:  And that is a written plea agreement?

10:28AM  4              THE DEFENDANT:  Yes.

10:28AM  5              THE COURT:  And can you confirm that you've read that

10:28AM  6    document, the plea agreement, in full?

10:28AM  7              THE DEFENDANT:  Yes, I have read it in full, Your

10:28AM  8    Honor.

10:28AM  9              THE COURT:  And discussed it with counsel as well?

10:29AM  10             THE DEFENDANT:  Yes, I have.

10:29AM  11             THE COURT:  Are you confident, based on your own

10:29AM  12   review and discussions with counsel, that you understand each

10:29AM  13   of the terms of your plea agreement with the United States?

10:29AM  14             THE DEFENDANT:  Yes, I do, Your Honor.  I understand

10:29AM  15   fully.

10:29AM  16             THE COURT:  It is a 22-paged document that is the plea

10:29AM  17   agreement.  Is that your signature, sir?  I have a copy of it

10:29AM  18   here in front of me, is that your signature that appears on the

10:29AM  19   final page, page 22, which at least on my copy bears the date

10:29AM  20   of June 8, 2021?

10:29AM  21             THE DEFENDANT:  Yes, Your Honor, that is my signature.

10:29AM  22             THE COURT:  And does the plea agreement reflect the

10:29AM  23   entire agreement, Mr. Akau, that you have with the government?

10:29AM  24             THE DEFENDANT:  Yes, it does, Your Honor.

10:29AM  25             THE COURT:  In other words, did the government make

| | | |
|---|---|---|
| 10:29AM | 1 | any verbal or oral promises to you that they did not put into |
| 10:29AM | 2 | the body of the written plea agreement? |
| 10:29AM | 3 | THE DEFENDANT:  There was no promises that is not |
| 10:29AM | 4 | written on the plea agreement, Your Honor. |
| 10:29AM | 5 | THE COURT:  Do you understand, Mr. Akau, that the |
| 10:30AM | 6 | Court is not required to accept the plea agreement and that I |
| 10:30AM | 7 | could reject it after I consider a presentence investigation |
| 10:30AM | 8 | and investigation report, both of which will be completed over |
| 10:30AM | 9 | the course of the next several months after the conclusion of |
| 10:30AM | 10 | this morning's hearing? |
| 10:30AM | 11 | THE DEFENDANT:  Yes, Your Honor. |
| 10:30AM | 12 | MR. RICHARDS:  Your Honor -- |
| 10:30AM | 13 | THE COURT:  Do you understand -- |
| 10:30AM | 14 | Mr. Richards. |
| 10:30AM | 15 | MR. RICHARDS:  On the question of promises, I just |
| 10:30AM | 16 | want the Court to be aware that before there was a confirmation |
| 10:30AM | 17 | between counsel and I that his proffer statements would not be |
| 10:30AM | 18 | used against him at sentencing and then we discovered later on, |
| 10:30AM | 19 | after we discussed sort of a side letter we had, that the plea |
| 10:30AM | 20 | agreement did provide in paragraph 21E, sort of the same thing. |
| 10:30AM | 21 | But I just wanted the Court to be aware that I did advise my |
| 10:31AM | 22 | client, and we did have an agreement that the statements that |
| 10:31AM | 23 | were made in the proffer section that may not be part of the |
| 10:31AM | 24 | indictment were not going to be used against Mr. Akau. |
| 10:31AM | 25 | THE COURT:  Okay.  Mr. Inciong, can you -- do you want |

10:31AM   1    to address that?

10:31AM   2              MR. INCIONG:  Yes, Your Honor.  As I discussed with

10:31AM   3    Mr. Richards, I was going to address this when we got into the

10:31AM   4    description of the plea agreement.  But at paragraph 21E of the

10:31AM   5    plea agreement on page 20, which states that pursuant to

10:31AM   6    Section 1B1.8(a) of the Sentencing Guidelines, the prosecution

10:31AM   7    agrees that self-incriminating information provided pursuant to

10:31AM   8    this agreement to cooperate will not be used in determining the

10:31AM   9    applicable guideline range, except as may be provided in this

10:31AM  10    agreement and under Section 1B1.8, subparagraph B, of the

10:31AM  11    Sentencing Guidelines.

10:31AM  12              In paragraph 8E of the factual basis of the plea

10:32AM  13    agreement, there are some admissions that are included that the

10:32AM  14    defendant made under proffer.  So the government's position, as

10:32AM  15    I've explained to Mr. Richards, is that those admissions fall

10:32AM  16    squarely under the protections of paragraph 21E, and thus they

10:32AM  17    would not be used against Mr. Akau to determine his Sentencing

10:32AM  18    Guideline range or relevant conduct or anything of that nature.

10:32AM  19    So I believe it is fully covered by the plea agreement.

10:32AM  20              THE COURT:  Okay.  All right, I appreciate that

10:32AM  21    clarification.  We will get into the body of the plea agreement

10:32AM  22    in just a minute, I promise you.

10:32AM  23              Before we do that, Mr. Akau, there are just a couple

10:32AM  24    more questions that I want to ask you, the first of which is:

10:32AM  25    Do you understand, sir, that any stipulations in the plea

10:32AM   1     agreement are stipulations that you've reached with the

10:32AM   2     Department of Justice or the U.S. Attorney's Office and that

10:32AM   3     the Court is specifically not bound by those stipulations?

10:33AM   4          THE DEFENDANT:  I understand, Your Honor.

10:33AM   5          THE COURT:  And now, Mr. Inciong, now we've gotten to

10:33AM   6     that point.  If you would, please describe the essential terms

10:33AM   7     of the government's plea agreement with Mr. Akau to include any

10:33AM   8     appellate waiver provisions, please.

10:33AM   9          MR. INCIONG:  Yes, Your Honor.  The terms of the plea

10:33AM  10     agreement to which the government and Mr. Akau have entered are

10:33AM  11     as follows:

10:33AM  12          First, Mr. Akau acknowledges that he has been charged

10:33AM  13     in Counts 1, 16, 17, 18 and 19 of the superseding indictment in

10:33AM  14     this matter, which has also placed him on notice of the first,

10:33AM  15     second, fourth, and fifth forfeiture allegations.

10:33AM  16          The defendant has read the charges against him

10:33AM  17     contained in the superseding indictment and those charges have

10:33AM  18     been fully explained to him by Mr. Richards, his attorney.  The

10:33AM  19     defendant fully understands the nature and elements of the

10:33AM  20     crimes with which he has been charged.

10:33AM  21          As part of the agreement, pursuant to the agreement,

10:33AM  22     the defendant will enter a voluntary plea of guilty to Count 1

10:34AM  23     of the superseding indictment which charges him with conspiring

10:34AM  24     to violate the racketeering laws of the United States,

10:34AM  25     specifically Title 18, U.S. Code, Section 1962(d), as in David.

| | | |
|---|---|---|
| 10:34AM | 1 | In return, the government agrees to move to dismiss |
| 10:34AM | 2 | Counts 16, 17, 18, and 19 of the superseding indictment as to |
| 10:34AM | 3 | Mr. Akau after sentencing. |
| 10:34AM | 4 | The government also has agreed not to file any |
| 10:34AM | 5 | additional charges against the defendant for attempted murder |
| 10:34AM | 6 | or his participation in any murder for hire scheme to the |
| 10:34AM | 7 | extent those are now known to the government. |
| 10:34AM | 8 | The defendant agrees that this memorandum of plea |
| 10:34AM | 9 | agreement shall be filed and become part of the record in this |
| 10:34AM | 10 | case. |
| 10:34AM | 11 | The defendant entered this plea because he is in fact |
| 10:34AM | 12 | guilty of conspiring to violate the racketeering laws of the |
| 10:34AM | 13 | United States as charged in Count 1 of the superseding |
| 10:34AM | 14 | indictment and agrees that his plea is voluntary and not the |
| 10:34AM | 15 | result of any force or threats. |
| 10:35AM | 16 | The defendant understands the maximum penalties which |
| 10:35AM | 17 | were recited a few minutes ago that apply to this particular |
| 10:35AM | 18 | charge.  As indicated, there is a forfeiture provision on |
| 10:35AM | 19 | paragraph 7C at page 4, but there is no applicable specific |
| 10:35AM | 20 | forfeiture at this time. |
| 10:35AM | 21 | The Court could also award restitution pursuant to |
| 10:35AM | 22 | Title 18, U.S. Code, Section 3663A if appropriate as well. |
| 10:35AM | 23 | There are a number of factual stipulations, which I |
| 10:35AM | 24 | will address later, which begin at page 5 on paragraph 8 of the |
| 10:35AM | 25 | plea agreement.  Those continue on to page 6, 7, 8, 9 and |

| | | |
|---|---|---|
| 10:35AM | 1 | concludes on the top of page 10. |
| 10:35AM | 2 | There are a number of sentencing stipulations as well. |
| 10:36AM | 3 | But before I address those, I should also note to the Court |
| 10:36AM | 4 | that the parties agree that the charge to which the defendant |
| 10:36AM | 5 | is pleading guilty adequately reflects the seriousness of the |
| 10:36AM | 6 | actual offense behavior and that accepting this plea agreement |
| 10:36AM | 7 | would not undermine any statutory purposes of sentencing. |
| 10:36AM | 8 | As far as stipulations, the parties stipulate to the |
| 10:36AM | 9 | facts set forth in paragraph 8 of the plea agreement.  Also, as |
| 10:36AM | 10 | of the date of this plea agreement, it is expected that the |
| 10:36AM | 11 | defendant will enter a plea of guilty prior to the commencement |
| 10:36AM | 12 | of trial, will truthfully admit his involvement in the offense |
| 10:36AM | 13 | and related conduct, and will not engage in conduct that is |
| 10:36AM | 14 | inconsistent with such acceptance of responsibility.  If all of |
| 10:36AM | 15 | those events occur, and the defendant's acceptance of |
| 10:36AM | 16 | responsibility continues through the date of sentencing, a |
| 10:36AM | 17 | downward adjustment of minus two levels for acceptance of |
| 10:36AM | 18 | responsibility will be appropriate pursuant to Guideline |
| 10:36AM | 19 | Section 3E1.1, subparagraph A, and Application Note 3. |
| 10:37AM | 20 | The U.S. attorney also agrees that Mr. Akau's |
| 10:37AM | 21 | agreement to enter into a guilty plea constitutes notice of |
| 10:37AM | 22 | intent to plead guilty in a timely manner, so as to permit the |
| 10:37AM | 23 | government to avoid preparing for trial as to Mr. Akau. |
| 10:37AM | 24 | Accordingly, the U.S. Attorney anticipates moving in the |
| 10:37AM | 25 | government's sentencing statement for an additional one-level |

| | | |
|---|---|---|
| 10:37AM | 1 | reduction in sentencing pursuant to Guideline Section 3E1.1, |
| 10:37AM | 2 | subparagraph B, subparagraph two, if the defendant is otherwise |
| 10:37AM | 3 | eligible. |
| 10:37AM | 4 | The defendant understands however that notwithstanding |
| 10:37AM | 5 | those present intentions, and still within the parameters of |
| 10:37AM | 6 | this plea agreement, the prosecution reserves its right to, |
| 10:37AM | 7 | one, argue to the contrary in the event that new information |
| 10:37AM | 8 | relating to those issues is received prior to sentencing, and, |
| 10:37AM | 9 | number two, to call and examine witnesses on those issues in |
| 10:37AM | 10 | the event that either U.S. Probation finds to the contrary of |
| 10:37AM | 11 | the prosecution's intentions or that the Court requests |
| 10:38AM | 12 | evidence be presented on those issues. |
| 10:38AM | 13 | Also, the parties agree and stipulate that |
| 10:38AM | 14 | notwithstanding the parties' agreement herein, the Court is not |
| 10:38AM | 15 | bound by any stipulation entered into by the parties but may, |
| 10:38AM | 16 | with the aid of the presentence report, determine any facts |
| 10:38AM | 17 | relevant to sentencing.  The parties also understand that the |
| 10:38AM | 18 | Court's rejection of any stipulation between the parties does |
| 10:38AM | 19 | not constitute a refusal to accept this plea agreement since |
| 10:38AM | 20 | the Court is expressly not bound by any stipulations between |
| 10:38AM | 21 | the parties. |
| 10:38AM | 22 | The parties do represent, Your Honor, that as of the |
| 10:38AM | 23 | date of this agreement there are no material facts in dispute. |
| 10:38AM | 24 | Ordinarily, Mr. Akau would have the right to appeal or |
| 10:38AM | 25 | collaterally review his sentence and conviction.  The defendant |

| | | |
|---|---|---|
| 10:38AM | 1 | understands though that he is knowingly and voluntarily waiving |
| 10:38AM | 2 | his right to appeal in this case pursuant to the plea |
| 10:38AM | 3 | agreement, except as indicated in subparagraph B of paragraph |
| 10:39AM | 4 | 13.  That includes his conviction and sentence within the |
| 10:39AM | 5 | guideline range as determined by the Court at the time of |
| 10:39AM | 6 | sentencing, as well as any lawful restitution or forfeiture |
| 10:39AM | 7 | order imposed or the manner in which the sentence, restitution |
| 10:39AM | 8 | or forfeiture order was determined on any ground whatsoever in |
| 10:39AM | 9 | exchange for concessions made by the prosecution in this plea |
| 10:39AM | 10 | agreement.  The defendant does understand that this waiver |
| 10:39AM | 11 | includes the right to assert any and all legally waivable |
| 10:39AM | 12 | claims. |
| 10:39AM | 13 | The defendant also waives the right to challenge his |
| 10:39AM | 14 | conviction or sentence or the manner in which it was determined |
| 10:39AM | 15 | in any collateral attack including, but not limited to, a |
| 10:39AM | 16 | motion brought under Title 28, U.S. Code, Section 2255, except |
| 10:39AM | 17 | that the defendant may make such a challenge, one, as to the |
| 10:39AM | 18 | terms indicated in subparagraph B, which I'll address in a |
| 10:39AM | 19 | minute, or two, based on a claim of ineffective assistance of |
| 10:39AM | 20 | counsel. |
| 10:39AM | 21 | In other words, the defendant is waiving his rights to |
| 10:39AM | 22 | appeal and collaterally attack in this case except for two |
| 10:40AM | 23 | limited circumstances.  The first being that if the Court would |
| 10:40AM | 24 | impose a sentence greater than that as specified in the |
| 10:40AM | 25 | applicable guideline range that is determined by the Court to |

10:40AM   1   the defendant, based on the facts in this case, Mr. Akau would

10:40AM   2   retain his right to appeal the portion of his sentence greater

10:40AM   3   than the applicable guideline range.  And as indicated also, he

10:40AM   4   would retain his right to appeal or collaterally attack any

10:40AM   5   claim that he believes he has based on ineffective assistance

10:40AM   6   of counsel.

10:40AM   7           The prosecution does retain its right to appeal the

10:40AM   8   sentence and the manner in which it was determined on any

10:40AM   9   grounds stated in Title 18, U.S. Code, Section 3742(b).

10:40AM   10          There is a financial disclosure provision as part of

10:40AM   11  this plea agreement wherein Mr. Akau is agreeing to fully

10:40AM   12  disclose all assets in which he has any interest or which he

10:40AM   13  exercises control, either directly or indirectly, including any

10:41AM   14  assets held by a spouse, nominee, or third party.

10:41AM   15          The defendant understands that the U.S. Probation

10:41AM   16  Office will conduct a presentence investigation that will

10:41AM   17  require the defendant to complete a comprehensive financial

10:41AM   18  statement.  To avoid the requirement of the defendant

10:41AM   19  completing financial statements for both the U.S. Probation

10:41AM   20  Office and the government, the defendant has agreed to

10:41AM   21  truthfully complete a financial statement provided to him by

10:41AM   22  the U.S. Attorney's Office.  In it the defendant agrees to

10:41AM   23  complete the disclosure statement and provide it to the U.S.

10:41AM   24  Probation Office within the time frame required by the officer

10:41AM   25  assigned to the defendant's case.

| | | |
|---|---|---|
| 10:41AM | 1 | The defendant understands that the U.S. Probation |
| 10:41AM | 2 | Office will in turn provide a copy of the completed financial |
| 10:41AM | 3 | statement to the U.S. Attorney's office.  The defendant agrees |
| 10:41AM | 4 | to provide written updates to both the U.S. Probation Office |
| 10:41AM | 5 | and the U.S. Attorney's Office regarding any material change in |
| 10:41AM | 6 | circumstances which occur prior to sentencing.  The defendant's |
| 10:42AM | 7 | failure to timely and accurately complete and sign the |
| 10:42AM | 8 | financial statement and any updates in addition to any other |
| 10:42AM | 9 | penalty or remedy constitute a failure to accept responsibility |
| 10:42AM | 10 | under Guideline Section 3E1.1. |
| 10:42AM | 11 | As part of that financial disclosure agreement, the |
| 10:42AM | 12 | defendant has also expressly authorized the U.S. Attorney's |
| 10:42AM | 13 | Office to obtain his credit report. |
| 10:42AM | 14 | Finally, prior to sentencing, the defendant agrees to |
| 10:42AM | 15 | notify the financial litigation office of the U.S. Attorney's |
| 10:42AM | 16 | Office, before making any transfer of an interest in any |
| 10:42AM | 17 | property with a value exceeding $1,000, either owned directly |
| 10:42AM | 18 | or indirectly, individually or jointly held by defendant, |
| 10:42AM | 19 | including any interest held or owned under any name, including |
| 10:42AM | 20 | trusts, partnerships, and corporations. |
| 10:42AM | 21 | In regard to imposition of sentence, the defendant |
| 10:42AM | 22 | understands that the District Court in imposing his sentence |
| 10:42AM | 23 | will consider the provisions of the Sentencing Guidelines; that |
| 10:42AM | 24 | there was no promise or guarantee as to the applicability or |
| 10:43AM | 25 | non-applicability of those guidelines. |

10:43AM  1          The defendant also understands that this plea

10:43AM  2   agreement will not be accepted or rejected by the Court until

10:43AM  3   it has had an opportunity to consider the presentence report

10:43AM  4   that will be prepared in this case.

10:43AM  5          The defendant understands that the Court will not

10:43AM  6   accept an agreement unless the Court determines that the

10:43AM  7   remaining charge adequately reflects the seriousness of the

10:43AM  8   actual offense behavior and that accepting the plea agreement

10:43AM  9   would not undermine any statutory purposes of sentencing.

10:43AM  10          By entering this plea agreement the defendant is

10:43AM  11   waiving a number of important trial rights, both constitutional

10:43AM  12   and otherwise, including the right to have a speedy trial and

10:43AM  13   to have his case heard by a jury of 12 peers.

10:43AM  14          The defendant also understands that he would have a

10:43AM  15   privilege against self-incrimination so that he could decline

10:43AM  16   to testify and that no inference of guilt could be drawn from

10:43AM  17   his refusal to testify.

10:44AM  18          The defendant understands that by pleading guilty, he

10:44AM  19   is waiving all of the rights set forth in this paragraph and

10:44AM  20   that his attorney has explained those rights to him along with

10:44AM  21   the consequences of the waiver of those rights.

10:44AM  22          In regard to use of plea statements, Your Honor, if

10:44AM  23   after signing the agreement the defendant decides not to plead

10:44AM  24   guilty as provided herein, or if the defendant pleads guilty

10:44AM  25   but subsequently makes a motion before this Court to withdraw

| | | |
|---|---|---|
| 10:44AM | 1 | his guilty plea and the Court would grand that motion, the |
| 10:44AM | 2 | defendant agrees that any admission of guilt that he makes by |
| 10:44AM | 3 | signing this agreement or that he make while pleading as set |
| 10:44AM | 4 | forth in this plea agreement may be used against him in a |
| 10:44AM | 5 | subsequent trial if the defendant later proceeds to trial.  The |
| 10:44AM | 6 | defendant voluntarily, knowingly, and intelligently waives any |
| 10:44AM | 7 | protections afforded by Rule 11(f) of the Federal Rules of |
| 10:44AM | 8 | Criminal Procedure and Rule 410 of the Federal Rules of |
| 10:44AM | 9 | Evidence regarding the use of statements made in this agreement |
| 10:44AM | 10 | or during the course of pleading guilty when or if the guilty |
| 10:44AM | 11 | plea is later withdrawn.  The only exception to this paragraph |
| 10:45AM | 12 | is where the defendant fully complies with this agreement but |
| 10:45AM | 13 | the Court nonetheless rejects it.  Under those circumstances, |
| 10:45AM | 14 | the United States may not use those statements against the |
| 10:45AM | 15 | defendant for any purpose. |
| 10:45AM | 16 | Lastly, the defendant understands that the prosecution |
| 10:45AM | 17 | will apprise the Court and the U.S. Probation Officer of the |
| 10:45AM | 18 | nature, scope, and extent of the defendant's conduct regarding |
| 10:45AM | 19 | the charges against him, related matters, and any matters in |
| 10:45AM | 20 | aggravation or mitigation which are relevant to sentencing. |
| 10:45AM | 21 | There is a cooperation provision pursuant to this plea |
| 10:45AM | 22 | agreement, Your Honor.  The defendant agrees that he will fully |
| 10:45AM | 23 | cooperate with the United States, which includes agreeing to |
| 10:45AM | 24 | testifying truthfully at any and all trials, hearings, or any |
| 10:45AM | 25 | other proceedings at which the prosecution requests him to |

Case 1:19-cr-00099-DKW-KJM    Document 1927    Filed 07/02/25    Page 25 of 59
PageID.29596

25

| | | |
|---|---|---|
| 10:45AM | 1 | testify, including but not limited to any grand jury |
| 10:45AM | 2 | proceedings, trial proceedings involving co-defendants and |
| 10:45AM | 3 | others charged later in this investigation, sentencing |
| 10:46AM | 4 | hearings, and related civil proceedings. |
| 10:46AM | 5 | The defendant also agrees to be available to speak |
| 10:46AM | 6 | with law enforcement officials and representatives of the |
| 10:46AM | 7 | U.S. Attorney's Office at any time and to give truthful and |
| 10:46AM | 8 | complete answers at such meetings, but understands he may have |
| 10:46AM | 9 | counsel present at those conversations. |
| 10:46AM | 10 | Defendant agrees that he will not assert any privilege |
| 10:46AM | 11 | to refuse to testify at any grand jury, trial, or other |
| 10:46AM | 12 | proceeding, involving or related to the crimes charged in this |
| 10:46AM | 13 | superseding indictment or any subsequent charges related to |
| 10:46AM | 14 | this investigation, at which the prosecution requests him to |
| 10:46AM | 15 | testify. |
| 10:46AM | 16 | The defendant also understands that his sentencing |
| 10:46AM | 17 | date may be delayed based on the government's need for his |
| 10:46AM | 18 | continued cooperation, and agrees not to object to any |
| 10:46AM | 19 | continuances of the defendant's sentencing date sought by the |
| 10:46AM | 20 | United States. |
| 10:46AM | 21 | Subparagraph E is the paragraph I addressed earlier. |
| 10:46AM | 22 | Your Honor, pursuant to Section 1B1.8(a) in which the |
| 10:46AM | 23 | defendant's admissions made under proffer may not be used |
| 10:47AM | 24 | against him in any way in determining his sentence, relevant |
| 10:47AM | 25 | conduct, and so forth. I should also add that it is the |

10:47AM  1   government's view that those statements provided against his

10:47AM  2   own interest, which are included in the factual basis, are in

10:47AM  3   the government's view part of his cooperation and will be

10:47AM  4   addressed and brought to the Court's attention in the form of a

10:47AM  5   5K motion, if and when that time is appropriate.

10:47AM  6          In the event that the defendant does not breach any of

10:47AM  7   the terms of this agreement but the Court nonetheless refuses

10:47AM  8   to accept the agreement after the defendant has made statements

10:47AM  9   to law enforcement authorities, the prosecution agrees not to

10:47AM  10  use those statements in its case-in-chief in the trial of the

10:47AM  11  defendant in this matter.

10:47AM  12         The defendant understands, however, that this does not

10:47AM  13  bar the use of information and evidence derived from said

10:47AM  14  statements or prohibit the use of the statements by the

10:47AM  15  prosecution in cross-examination or rebuttal.

10:48AM  16         Pursuant to Guideline Section 5K1.1 and Rule 35(b) of

10:48AM  17  the Federal Rules of Criminal Procedure, the prosecution may

10:48AM  18  move the Court to depart from the guidelines on the ground that

10:48AM  19  defendant provided substantial assistance to authorities in the

10:48AM  20  investigation or prosecution of another person who has

10:48AM  21  committed an offense.  The defendant understands, however, that

10:48AM  22  the decision as to whether to make such a request or motion

10:48AM  23  lies entirely within the discretion of the prosecution.

10:48AM  24         This agreement does not require the prosecution to

10:48AM  25  make such a request or motion.

| | | |
|---|---|---|
| 10:48AM | 1 | The agreement confers neither any right upon the |
| 10:48AM | 2 | defendant to have the prosecution make such a request for a |
| 10:48AM | 3 | motion, nor any remedy to the defendant in the event the |
| 10:48AM | 4 | prosecution fails to make such a request or motion. |
| 10:48AM | 5 | Even in the event that the prosecution makes such a |
| 10:48AM | 6 | request or motion, the Court may refuse to depart from the |
| 10:48AM | 7 | guidelines or to impose a sentence below the minimum level if |
| 10:48AM | 8 | applicable established by statute, as the Court has final |
| 10:49AM | 9 | discretion over any such motion. |
| 10:49AM | 10 | The defendant and his attorney acknowledge that, apart |
| 10:49AM | 11 | from any written agreements, if applicable, no threats, |
| 10:49AM | 12 | promises, agreements or conditions have been entered into by |
| 10:49AM | 13 | the parties other than those set forth in this agreement, to |
| 10:49AM | 14 | induce the defendant to plead guilty.  Apart from any written |
| 10:49AM | 15 | proffer agreements, this agreement supersedes all prior |
| 10:49AM | 16 | promises, agreements or conditions between the parties. |
| 10:49AM | 17 | To become effective, this plea agreement must be |
| 10:49AM | 18 | signed by all signatories; that has been done.  Because of the |
| 10:49AM | 19 | defendant's incarceration and the pandemic, it is on two |
| 10:49AM | 20 | separate pages, Your Honor.  The government's original |
| 10:49AM | 21 | signatures are shown on the first page 22 (verbatim), which is |
| 10:49AM | 22 | dated today's date, June 8, 2021.  The defendant's signature, |
| 10:49AM | 23 | along with his attorney's signature, are on the second page 22 |
| 10:49AM | 24 | which is the final page of this plea agreement. |
| 10:49AM | 25 | Finally, the parties agree that should the Court |

10:50AM   1   refuse to accept this plea agreement, it is null and avoid at

10:50AM   2   that point and neither party would be bound thereto.  Those are

10:50AM   3   the terms of the plea agreement, Your Honor.

10:50AM   4         THE COURT:  Mr. Richards, do you agree that AUSA

10:50AM   5   Inciong has accurately described the essential terms of your

10:50AM   6   client's plea agreement with the government?

10:50AM   7         MR. RICHARDS:  Yes.

10:50AM   8         THE COURT:  Mr. Akau, there are some important trial

10:50AM   9   and trial related rights that you would be waiving by virtue of

10:50AM   10  proceeding with this plea.  Those rights are largely described

10:50AM   11  at paragraphs 17 and 18 of this plea agreement.  I'm going to

10:50AM   12  go over those rights with you now, the first of which, sir, is:

10:50AM   13        Do you understand that under the constitution and laws

10:50AM   14  of the United States, you do have the right not to plead guilty

10:50AM   15  and to proceed to a trial, including a trial by jury, on the

10:50AM   16  charges brought against you?

10:50AM   17        THE DEFENDANT:  Yes, I understand, Your Honor.

10:50AM   18        THE COURT:  Mr. Akau, do you further understand that

10:51AM   19  if you were to proceed to trial, you would be presumed

10:51AM   20  innocent, which means that the government would have the burden

10:51AM   21  of proving your guilt to a jury beyond a reasonable doubt and

10:51AM   22  that at no time would you have the burden of proving you are

10:51AM   23  not guilty?

10:51AM   24        THE DEFENDANT:  I understand, Your Honor.

10:51AM   25        THE COURT:  Do you understand further that in order to

| | | |
|---|---|---|
| 10:51AM | 1 | be found guilty at a trial, a jury of 12 persons from the local |
| 10:51AM | 2 | community would have to find your guilt not only beyond a |
| 10:51AM | 3 | reasonable doubt but they would have to do unanimously? |
| 10:51AM | 4 | THE DEFENDANT:  I understand, Your Honor. |
| 10:51AM | 5 | THE COURT:  Do you understand that at all stages of |
| 10:51AM | 6 | the prosecution, which includes trial, you have the right to |
| 10:51AM | 7 | the assistance of counsel, as you do here this morning, and if |
| 10:51AM | 8 | at any point in time you could not afford counsel one would be |
| 10:51AM | 9 | appointed for you by the Court at no cost to you? |
| 10:51AM | 10 | THE DEFENDANT:  I understand, Your Honor. |
| 10:51AM | 11 | THE COURT:  Mr. Akau, do you further understand that |
| 10:51AM | 12 | at any trial you would have the right to see and to hear all of |
| 10:51AM | 13 | the government's evidence and witnesses and to have those |
| 10:52AM | 14 | witnesses questioned by your own attorney? |
| 10:52AM | 15 | THE DEFENDANT:  I understand, Your Honor. |
| 10:52AM | 16 | THE COURT:  Can you also confirm you understand that |
| 10:52AM | 17 | at any trial you could object to any of the evidence offered by |
| 10:52AM | 18 | the United States, and you could present evidence of your own |
| 10:52AM | 19 | in your case in chief including through witness testimony that |
| 10:52AM | 20 | is compelled through the Court's subpoena power, if that were |
| 10:52AM | 21 | necessary? |
| 10:52AM | 22 | THE DEFENDANT:  I understand, Your Honor. |
| 10:52AM | 23 | THE COURT:  Do you understand that at any trial you |
| 10:52AM | 24 | would also have the right to testify on your own behalf, if you |
| 10:52AM | 25 | chose to do that; but if you chose not to, no inference or |

10:52AM 1    suggestion of your guilt could be drawn by the jury by the fact

10:52AM 2    that you chose not to testify?

10:52AM 3            THE DEFENDANT:  I understand, Your Honor.

10:52AM 4            THE COURT:  Do you understand, Mr. Akau, that by

10:52AM 5    entering a plea of guilty here this morning, and if I were to

10:52AM 6    accept that plea, there will be no trial and you will have

10:52AM 7    given up each of these trial related rights that I just

10:52AM 8    mentioned?

10:52AM 9            THE DEFENDANT:  I understand, Your Honor.

10:52AM 10           THE COURT:  Do you as well understand, sir, that to

10:53AM 11   proceed with your plea, you will also need to give up your

10:53AM 12   right not to incriminate yourself, and the reason for that is

10:53AM 13   I'm about to ask you a few questions about what you did that

10:53AM 14   makes you guilty of Count 1, and those questions will need to

10:53AM 15   be answered?

10:53AM 16           THE DEFENDANT:  Yes, Your Honor, I understand.

10:53AM 17           THE COURT:  Do you have any -- Mr. Akau, do you have

10:53AM 18   questions at all regarding any of these rights that I just

10:53AM 19   mentioned?

10:53AM 20           THE DEFENDANT:  I do not at this time, Your Honor.

10:53AM 21           THE COURT:  And knowing these rights, do you still

10:53AM 22   wish to proceed with your plea?

10:53AM 23           THE DEFENDANT:  Yes, I do Your Honor.

10:53AM 24           THE COURT:  Are you a United States citizen, Mr. Akau?

10:53AM 25           THE DEFENDANT:  Yes, I am.  Your Honor.

| 10:53AM | 1 | THE COURT:  As a United States citizen then you need |
| 10:53AM | 2 | to understand that the charge brought against you, Count 1 of |
| 10:53AM | 3 | the indictment, is considered a felony offense.  If your plea |
| 10:53AM | 4 | is accepted and you are adjudged guilty of that offense, that |
| 10:53AM | 5 | adjudication by the Court could deprive you of some valuable |
| 10:53AM | 6 | civil rights.  Those civil rights include the right to vote, |
| 10:53AM | 7 | the right to hold public office, the right to sit on a jury, as |
| 10:54AM | 8 | well as the right to possess or bear a firearm; do you |
| 10:54AM | 9 | understand that as well? |
| 10:54AM | 10 | THE DEFENDANT:  Yes, Your Honor, I understand. |
| 10:54AM | 11 | THE COURT:  With regard to sentencing, United States |
| 10:54AM | 12 | law establishes detailed sentencing guidelines that apply to |
| 10:54AM | 13 | those who are convicted of, which include those who plead |
| 10:54AM | 14 | guilty to federal crimes.  The sentencing judge, in this case |
| 10:54AM | 15 | most likely myself, must consider those sentencing guidelines |
| 10:54AM | 16 | and additionally must consider the statutory sentencing factors |
| 10:54AM | 17 | that are set forth at 18 United States Code, Section 3553(a). |
| 10:54AM | 18 | Although the sentencing judge must consider the |
| 10:54AM | 19 | sentencing guidelines, those guidelines are what the name might |
| 10:54AM | 20 | imply to you.  They are guidelines which means that they are |
| 10:54AM | 21 | advisory on this Court only.  Do you understand that? |
| 10:54AM | 22 | THE DEFENDANT:  Yes, Your Honor, I understand. |
| 10:54AM | 23 | THE COURT:  Mr. Akau, have you discussed with |
| 10:54AM | 24 | Mr. Richards how the sentencing guidelines might apply to your |
| 10:54AM | 25 | case? |

| | | |
|---|---|---|
| 10:54AM | 1 | THE DEFENDANT:  Yes, I have Your Honor. |
| 10:54AM | 2 | THE COURT:  And I always am careful to use the term |
| 10:55AM | 3 | "might" and that's because as I sit here today I cannot with |
| 10:55AM | 4 | precision tell you how the guidelines will apply to your case. |
| 10:55AM | 5 | I will not be able to do that until after a presentence |
| 10:55AM | 6 | investigation and investigation report have been completed and |
| 10:55AM | 7 | after both Mr. Inciong and Mr. Richards have an opportunity to |
| 10:55AM | 8 | provide me with any comments on or objections to the contents |
| 10:55AM | 9 | of that report that they may have.  Do you understand that |
| 10:55AM | 10 | process? |
| 10:55AM | 11 | THE DEFENDANT:  Yes, Your Honor, I understand. |
| 10:55AM | 12 | THE COURT:  Now approximately three to four months |
| 10:55AM | 13 | from now there will come a time when I'm able to determine with |
| 10:55AM | 14 | some precision how the guidelines apply to your case and how |
| 10:55AM | 15 | the 3553(a) statutory factors likewise apply.  When I consider |
| 10:55AM | 16 | both of those items, I could impose a sentence that is either |
| 10:55AM | 17 | more or less severe than what the guidelines call for.  Do you |
| 10:55AM | 18 | understand that? |
| 10:55AM | 19 | THE DEFENDANT:  Yes, Your Honor, I understand. |
| 10:55AM | 20 | THE COURT:  Now, Mr. Akau if I were to impose a |
| 10:55AM | 21 | sentence that is more severe than what you expect or more |
| 10:56AM | 22 | severe than what the guidelines call for, do you realize and |
| 10:56AM | 23 | understand that you will still be bound by both your plea as |
| 10:56AM | 24 | well as your plea agreement and at least on that basis will |
| 10:56AM | 25 | have no right to withdraw from either? |

10:56AM  1          THE DEFENDANT:  Yes, Your Honor, I understand.

10:56AM  2          THE COURT:  Do you understand that despite any

10:56AM  3  discussions you may have had with Mr. Richards, with

10:56AM  4  Mr. Inciong, or with anyone else regarding the type or the

10:56AM  5  duration of the sentence you are likely to receive, or

10:56AM  6  regarding any sentencing recommendation that they may wish to

10:56AM  7  provide to me, I am not bound by those discussions nor is the

10:56AM  8  Court bound by any sentencing recommendations provided to it,

10:56AM  9  and I could impose a sentence that is more severe than what you

10:56AM  10  expect up to the maximum permitted by law?

10:56AM  11          THE DEFENDANT:  Yes, Your Honor, I understand.

10:56AM  12          THE COURT:  Mr. Akau, has anyone made any promises to

10:56AM  13  you regarding what your sentence will be?

10:56AM  14          THE DEFENDANT:  Only to what was on the plea

10:56AM  15  agreement, Your Honor.

10:56AM  16          THE COURT:  Well, the plea agreement doesn't specify

10:56AM  17  any kind of sentence at all.  Do you understand that?

10:57AM  18          MR. RICHARDS:  Your Honor, I did promise him there is

10:57AM  19  no mandatory minimum and a cap of 20 years, so that's the

10:57AM  20  promise I made.

10:57AM  21          THE COURT:  Okay.  So you're talking about what the

10:57AM  22  statutory penalties that you face -- we went over this a few

10:57AM  23  minutes ago -- the potential penalties that you face for

10:57AM  24  pleading guilty to this particular count; is that what you're

10:57AM  25  referring to, sir?

| | | |
|---|---|---|
| 10:57AM | 1 | THE DEFENDANT: Yes, sir, Your Honor. That's what I'm |
| 10:57AM | 2 | referring to. |
| 10:57AM | 3 | THE COURT: All right, has anyone made any other |
| 10:57AM | 4 | promises to you regarding what your sentence will be? |
| 10:57AM | 5 | THE DEFENDANT: No, Your Honor. |
| 10:57AM | 6 | THE COURT: Do you understand, Mr. Akau, that at the |
| 10:57AM | 7 | time of sentencing there is no limitation on the information |
| 10:57AM | 8 | that I can consider regarding your background, your character, |
| 10:57AM | 9 | and your conduct except that the information I use must be |
| 10:57AM | 10 | sufficiently reliable? |
| 10:57AM | 11 | MR. RICHARDS: Your Honor -- |
| 10:57AM | 12 | THE DEFENDANT: Yes, Your Honor. |
| 10:57AM | 13 | MR. RICHARDS: -- are you excluding the -- you |
| 10:57AM | 14 | wouldn't consider the material covered by 21E, correct? |
| 10:57AM | 15 | THE COURT: I mean, we've been through this four |
| 10:58AM | 16 | times, haven't we? |
| 10:58AM | 17 | MR. RICHARDS: Well, I just wanted the Court to know I |
| 10:58AM | 18 | had an experience recently in another matter where cooperation |
| 10:58AM | 19 | statements were considered, and I just didn't want to make a |
| 10:58AM | 20 | misunderstanding on that; that was why I clarified it. |
| 10:58AM | 21 | THE COURT: I understand the agreement that you've |
| 10:58AM | 22 | reached with the U.S. Attorney's Office with respect to 21E. |
| 10:58AM | 23 | MR. RICHARDS: Thank you. |
| 10:58AM | 24 | THE COURT: Mr. Akau, do you, sir, understand if a |
| 10:58AM | 25 | term of imprisonment is imposed as part of your sentence, a |

10:58AM  1    term of what we call supervised release is very likely to

10:58AM  2    follow, and if you were to violate any of the conditions of

10:58AM  3    supervised release, additional prison time could be imposed?

10:58AM  4             THE DEFENDANT:  Yes, Your Honor, I understand.

10:58AM  5             THE COURT:  Are you aware as well that in the federal

10:58AM  6    system parole has been abolished and so, from a practical

10:58AM  7    standpoint, what that means is if a term of imprisonment is

10:59AM  8    imposed as part of your sentence you will not be released early

10:59AM  9    on parole?

10:59AM  10            THE DEFENDANT:  I understand, Your Honor.

10:59AM  11            THE COURT:  And do you as well understand that as part

10:59AM  12   of any final judgment in this case, the Court could order you

10:59AM  13   to pay a fine as well as a special assessment?

10:59AM  14            THE DEFENDANT:  Yes, Your Honor, I understand.

10:59AM  15            THE COURT:  Likewise, there is at least the potential

10:59AM  16   for restitution and forfeiture of specific property although,

10:59AM  17   as I understand it from the government's representation thus

10:59AM  18   far, there is no specific item or amount that is called for at

10:59AM  19   this time.

10:59AM  20            THE DEFENDANT:  Yes, Your Honor, I understand.

10:59AM  21            THE COURT:  Mr. Akau, there are some facts now that we

10:59AM  22   need to get into a bit; those are largely set forth at

10:59AM  23   paragraph 8 of your particular plea agreement.  I need to be

10:59AM  24   sure in other words that you in fact committed the crime that

10:59AM  25   you have been charged with and that you are prepared to plead

11:00AM   1    guilty to of Count 1 of the indictment.

11:00AM   2         The first step in that process is to ask the

11:00AM   3    government's attorney to set forth the elements of that

11:00AM   4    particular count.

11:00AM   5         MR. INCIONG:  Thank you, Your Honor.  There are three

11:00AM   6    elements that the United States would have to prove beyond a

11:00AM   7    reasonable doubt if this matter proceeded to trial in regards

11:00AM   8    to Count 1 of the superseding indictment.

11:00AM   9         First, that there was an agreement between Mr. Akau

11:00AM  10    and at least one other person to commit a crime at least one

11:00AM  11    crime as charged in the superseding indictment.  In this case

11:00AM  12    it's the violation of the racketeering laws.

11:00AM  13         Secondly, that the defendant became a member of the

11:00AM  14    conspiracy knowing of at least one of its objects and intending

11:00AM  15    to help accomplish it.

11:00AM  16         Thirdly, that at least one of the members of the

11:00AM  17    conspiracy performed at least one overt act for the purpose of

11:00AM  18    carrying out the conspiracy.

11:00AM  19         The government's position is that the object of the

11:00AM  20    conspiracy in this case, Your Honor, was to participate in the

11:01AM  21    affairs of an association in fact as defined by Title 18 United

11:01AM  22    States Code, Section 1962C.  There are four what I'll refer to

11:01AM  23    as sub-elements that constitutes that particular crime; so I

11:01AM  24    would like to put those on the record as well as elements that

11:01AM  25    the government would have to prove beyond a reasonable doubt in

11:01AM    1    its case in chief.

11:01AM    2         First, there was an ongoing enterprise with some sort

11:01AM    3    of formal are informal framework for carrying out its

11:01AM    4    objectives consisting of a group of persons associated together

11:01AM    5    for a common purpose of engaging in a course of conduct.

11:01AM    6         Second, the defendant was employed by or associated

11:01AM    7    with the enterprise.

11:01AM    8         Third, that the defendant participated directly or

11:01AM    9    indirectly in the conduct of the affairs of the enterprise

11:01AM    10   through a pattern of racketeering activity or collection of

11:01AM    11   unlawful debt.

11:01AM    12        And, fourth, that the enterprise engaged in or its

11:02AM    13   activities in some way affected commerce between one state and

11:02AM    14   another state or between the United States and a foreign

11:02AM    15   country.

11:02AM    16        Those would be the elements required for the

11:02AM    17   government to prove beyond a reasonable doubt in this matter,

11:02AM    18   Your Honor.

11:02AM    19        THE COURT:  Mr. Richards, do you have any disagreement

11:02AM    20   with Mr. Inciong's description of the elements of Count 1?

11:02AM    21        MR. RICHARDS:  No.

11:02AM    22        THE COURT:  Then I'll turn back to Mr. Inciong to

11:02AM    23   please describe the evidence that the government would offer in

11:02AM    24   this case if it were to proceed to trial.

11:02AM    25        MR. INCIONG:  Yes, Your Honor.  If this matter

| | | |
|---|---|---|
| 11:02AM | 1 | proceeded to trial the government would provide evidence to |
| 11:02AM | 2 | show the following: |
| 11:02AM | 3 | That from at least in or about 2016 and continuing up |
| 11:02AM | 4 | to including June of 2020, Mr. Norman L. Akau, III, the |
| 11:02AM | 5 | defendant, while working at the direction of others in the |
| 11:02AM | 6 | Miske Enterprise, along with others known and unknown, were |
| 11:02AM | 7 | members and associates of the Miske Enterprise, and that those |
| 11:02AM | 8 | members and associates of the Miske Enterprise operated |
| 11:03AM | 9 | principally under the direction and protection of Michael J. |
| 11:03AM | 10 | Miske, Jr. who used his power over members -- |
| 11:03AM | 11 | (Gap in audio transmission.) |
| 11:03AM | 12 | Should I continue, Your Honor?  I just want to make |
| 11:03AM | 13 | sure we have everyone here. |
| 11:03AM | 14 | MR. RICHARDS:  The Court is on mute. |
| 11:03AM | 15 | THE COURT:  Thank you, Mr. Richards. |
| 11:03AM | 16 | Mr. Akau, can you determine from anyone around you at |
| 11:03AM | 17 | FDC on your end whether or not you will be permitted to |
| 11:03AM | 18 | continue on this video connection beyond right now? |
| 11:03AM | 19 | THE DEFENDANT:  I can call the guard, Your Honor. |
| 11:03AM | 20 | THE CLERK:  Just to let you know, Judge Otake has an |
| 11:03AM | 21 | 11:00 hearing with FDC.  Shelli is standing by and needs to |
| 11:03AM | 22 | know when our hearing is going to finish.  Would you know how |
| 11:04AM | 23 | long more so I can let her know? |
| 11:04AM | 24 | THE COURT:  I don't know how much longer, but I |
| 11:04AM | 25 | anticipate we will need about 15 minutes at least, I would |

| | | |
|---|---|---|
| 11:04AM | 1 | guess. |
| 11:04AM | 2 | THE CLERK:  Okay, let me check with her. |
| 11:04AM | 3 | THE COURT:  Can you see if they will stand by?  Thank |
| 11:04AM | 4 | you. |
| 11:04AM | 5 | MR. RICHARDS:  I'm happy to offer my Zoom, Your Honor, |
| 11:04AM | 6 | if we need it. |
| 11:04AM | 7 | THE COURT:  It's not your Zoom, we have Zoom as well, |
| 11:04AM | 8 | Mr. Richards.  It's the FDC line.  It's your client that won't |
| 11:04AM | 9 | be permitted to join, whether it's our Zoom or yours. |
| 11:04AM | 10 | THE CLERK:  Okay, Judge, they will stand by. |
| 11:04AM | 11 | THE COURT:  Thank you very much. |
| 11:04AM | 12 | Go ahead, Mr. Inciong, let's hopefully try to finish |
| 11:04AM | 13 | this up before we need to accede the line to Judge Otake. |
| 11:04AM | 14 | MR. INCIONG:  Thank you, Your Honor.  As I indicated, |
| 11:04AM | 15 | the evidence would show that members and associates of the |
| 11:04AM | 16 | Miske Enterprise operated principally under the direction and |
| 11:04AM | 17 | protection of Michael J. Miske, Jr., who used his power over |
| 11:05AM | 18 | members and associates of the Miske Enterprise, his reputation |
| 11:05AM | 19 | for violence in the community, and the various corporate |
| 11:05AM | 20 | entities under his control to enrich the members and associates |
| 11:05AM | 21 | of the Miske Enterprise and to protect the criminal activities. |
| 11:05AM | 22 | The evidence would show that Mr. Akau was not aware at all |
| 11:05AM | 23 | times as to who was working for Miske as he took directions |
| 11:05AM | 24 | from others who worked for Miske. |
| 11:05AM | 25 | The evidence would show that the Miske Enterprise, |

| 11:05AM | 1 | including its leadership, membership and associates, |
|---|---|---|
| 11:05AM | 2 | constituted an enterprise as that term is defined in Title 18, |
| 11:05AM | 3 | United States Code, Section 1961, subparagraph 4, that is, a |
| 11:05AM | 4 | group of individuals and its entities associated in fact.  The |
| 11:05AM | 5 | evidence would show that the Miske Enterprise was engaged in, |
| 11:05AM | 6 | and its activities affected, interstate commerce. |
| 11:05AM | 7 | Those areas most germane to this particular case, Your |
| 11:05AM | 8 | Honor, would be through the distribution of illegal drugs and |
| 11:05AM | 9 | the use of firearms which are manufactured outside of the State |
| 11:06AM | 10 | of Hawaii. |
| 11:06AM | 11 | The Miske Enterprise, the evidence would show, |
| 11:06AM | 12 | operated within the District of Hawaii and elsewhere and |
| 11:06AM | 13 | constituted an ongoing organization whose members and |
| 11:06AM | 14 | associates functioned as a continuing unit for a common purpose |
| 11:06AM | 15 | of achieving the objectives of the Miske Enterprise. |
| 11:06AM | 16 | The evidence would further show that beginning at |
| 11:06AM | 17 | least in or about 2016, Mr. Akau and others, known and unknown, |
| 11:06AM | 18 | being persons employed by and associated with the Miske |
| 11:06AM | 19 | Enterprise, willfully and knowingly combined, conspired, |
| 11:06AM | 20 | confederated, and agreed together and with each other to |
| 11:06AM | 21 | violate the racketeering laws of the United States, that is, to |
| 11:06AM | 22 | conduct and participate, directly and indirectly, in the |
| 11:06AM | 23 | conduct of the affairs of the Miske Enterprise through a |
| 11:06AM | 24 | pattern of racketeering activity, as that term is defined in |
| 11:06AM | 25 | Title 18, U.S. Code, Section 1961, subparagraph 1 and |

| | | |
|---|---|---|
| 11:06AM | 1 | subparagraph 5, all within the parameters of Section 1962, |
| 11:07AM | 2 | subparagraph D. |
| 11:07AM | 3 | The evidence would show that the racketeering activity |
| 11:07AM | 4 | to which Mr. Akau and others agreed included acts involving |
| 11:07AM | 5 | attempted murder and murder for hire; the felonious trafficking |
| 11:07AM | 6 | of controlled substances as alleged in Count 16 of the |
| 11:07AM | 7 | superseding indictment; and acts involving robbery and firearms |
| 11:07AM | 8 | relating to interference with interstate commerce as alleged in |
| 11:07AM | 9 | Counts 17, 18 and 19 of the superseding indictment. |
| 11:07AM | 10 | In regard to acts involving attempted murder and |
| 11:07AM | 11 | murder for hire, the evidence would show that at various times |
| 11:07AM | 12 | between in or around 2016 and 2017, Mr. Akau, along with other |
| 11:07AM | 13 | members of the Miske Enterprise, were offered contracts to |
| 11:07AM | 14 | commit and/or facilitate murder by Michael J. Miske, Jr. and |
| 11:07AM | 15 | engaged in attempts to commit those murders as requested by |
| 11:07AM | 16 | Miske.  Mr. Akau was not specifically directed by Miske but was |
| 11:07AM | 17 | instead directed by Wayne Miller who did report directly to |
| 11:08AM | 18 | Miske. |
| 11:08AM | 19 | Specifically in or around 2016 and 2017, the evidence |
| 11:08AM | 20 | would show that Mr. Akau, while being directed by Wayne Miller, |
| 11:08AM | 21 | accepted an offer from Miske to murder Victim-12 in exchange |
| 11:08AM | 22 | for $50,000.  To carry out the murder, the evidence would show |
| 11:08AM | 23 | Miller and Akau followed Victim-12, with the assistance of a |
| 11:08AM | 24 | GPS tracking device that Miller placed on Victim-12's vehicle, |
| 11:08AM | 25 | to a plate lunch restaurant on Sand Island in Honolulu.  When |

11:08AM    1    Victim-12 --

11:08AM    2              A VOICE:  Hello, excuse me.  Just for your information

11:08AM    3    there is an 11:00 appointment with Judge Otake next.

11:08AM    4              THE COURT:  Yes, Judge Otake has agreed to stand down

11:08AM    5    until we are complete.

11:08AM    6              A VOICE:  Thank you.

11:08AM    7              THE COURT:  Mr. Inciong, go ahead.

11:08AM    8              MR. INCIONG:  Thank you, Your Honor.  The evidence

11:08AM    9    would show that when Victim-12 came out of the restaurant,

11:08AM   10    Mr. Akau, who was armed with a pistol, was about to pull the

11:08AM   11    trigger in an attempt to shoot and kill Victim-12 when Miller

11:09AM   12    ordered him to stand down and not shoot because Miller had been

11:09AM   13    unable to remove the GPS tracker he placed on Victim-12's

11:09AM   14    vehicle.

11:09AM   15              The evidence would also show that in or around 2016,

11:09AM   16    Mr. Akau was also offered $50,000 by Miske, again through Wayne

11:09AM   17    Miller, this time to abduct Jonathan Fraser and transport him

11:09AM   18    to the north shore of Oahu where another individual would

11:09AM   19    commit Fraser's murder.  After thinking over the offer and

11:09AM   20    discussing it with others, Mr. Akau declined to accept the

11:09AM   21    offer because Fraser was, quote, a kid.

11:09AM   22              In regards to offenses involving robbery and firearms

11:09AM   23    relating to interference with interstate commerce, the evidence

11:09AM   24    would show that at various times between in or around 2016 and

11:09AM   25    in or around 2018, Mr. Akau, along with other members of the

| | | |
|---|---|---|
| 11:09AM | 1 | Miske Enterprise, engaged in and/or facilitated robberies. |
| 11:09AM | 2 | Often the targets of these robberies were drug dealers. |
| 11:10AM | 3 | For example, in or about 2016, Mr. Akau, along with |
| 11:10AM | 4 | Jacob "Jake" Smith, Ashlin Akau, Harry Kauhi, Lance Bermudez |
| 11:10AM | 5 | and at least one other individual participated in the robbery |
| 11:10AM | 6 | of Victim-4, a suspected drug dealer, who was believed to be in |
| 11:10AM | 7 | possession of a large quantity of methamphetamine.  The group |
| 11:10AM | 8 | traveled in two separate vehicles and forced the car in which |
| 11:10AM | 9 | Victim-4 was a passenger to stop on North School Street in |
| 11:10AM | 10 | Honolulu.  Mr. Akau was in one of the vehicles and was dressed |
| 11:10AM | 11 | to impersonate a plain clothes police officer.  He exited his |
| 11:10AM | 12 | vehicle while flashing a badge he obtained while working on the |
| 11:10AM | 13 | film set of Hawaii Five-0.  At the time Mr. Akau was armed with |
| 11:10AM | 14 | a .38 caliber revolver and a .22 caliber pistol equipped with a |
| 11:10AM | 15 | silencer in a backpack he was carrying.  Smith, Bermudez and at |
| 11:10AM | 16 | least one other individual, all armed with guns and wearing |
| 11:10AM | 17 | masks were in the second vehicle, a black BMW 3 series sedan, |
| 11:11AM | 18 | driven by Bermudez.  While displaying his badge with a walkie |
| 11:11AM | 19 | talkie in hand, Mr. Akau held Victim-4 and ordered him to a |
| 11:11AM | 20 | nearby telephone pole.  Mr. Akau then went to the trunk of the |
| 11:11AM | 21 | vehicle and grabbed a blue Walmart bag filled with several |
| 11:11AM | 22 | pounds of methamphetamine. |
| 11:11AM | 23 | After the robbery, Mr. Akau, Mr. Smith, Ashlin Akau, |
| 11:11AM | 24 | John B. Stancil, Harry Kauhi, and Lance Bermudez, along with at |
| 11:11AM | 25 | least one other individual, all met at another location and |

11:11AM    1    divided up the drugs amongst the groups.

11:11AM    2              In regard to offenses involving the felonious

11:11AM    3    trafficking of controlled substances, the evidence would show

11:11AM    4    that between in or around 2016 and continuing to at least in or

11:11AM    5    about August of 2018, Mr. Akau conspired with others to

11:12AM    6    distribute and possess, with intent to distribute, controlled

11:12AM    7    substances including methamphetamine.

11:12AM    8              For example, after the 2016 robbery of Victim-4, I've

11:12AM    9    just described which is reflected in subparagraph H, Mr. Akau

11:12AM    10   possessed his share of the stolen methamphetamine which was

11:12AM    11   approximately several ounces with the intend to further

11:12AM    12   distribute those drugs to another person.  That would be the

11:12AM    13   summary of the evidence the United States would produce at

11:12AM    14   trial, Your Honor.

11:12AM    15             THE COURT:  The details of that robbery of Victim-4 is

11:12AM    16   actually set forth in paragraph 8F, not 8H; is that correct?

11:12AM    17             MR. INCIONG:  Thank you.  Yes, Your Honor, my mistake.

11:12AM    18   Paragraph 8, subparagraph F, yes.

11:12AM    19             THE COURT:  Mr. Akau, do you understand the evidence

11:12AM    20   that the government would offer in this case if it were to

11:13AM    21   proceed to trial?

11:13AM    22             THE DEFENDANT:  Yes, Your Honor, I understand.

11:13AM    23             THE COURT:  And do you agree, sir, that what the

11:13AM    24   government said you did is true?

11:13AM    25             THE DEFENDANT:  Yes, Your Honor.

| | | |
|---|---|---|
| 11:13AM | 1 | THE COURT:  In your own words, Mr. Akau, please |
| 11:13AM | 2 | describe what you did that makes you guilty of Count 1. |
| 11:13AM | 3 | THE DEFENDANT:  I'm guilty because I was involved in |
| 11:13AM | 4 | those incidents, and I did participate in those counts, Your |
| 11:13AM | 5 | Honor. |
| 11:13AM | 6 | THE COURT:  And that all occurred between 2016 and |
| 11:13AM | 7 | 2020, is that roughly your understanding as well? |
| 11:13AM | 8 | THE DEFENDANT:  Your Honor, it was actually 2016 to |
| 11:13AM | 9 | about 2018, Your Honor. |
| 11:13AM | 10 | THE COURT:  Okay.  And during that time frame you were |
| 11:13AM | 11 | a member of a group of individuals that the government has |
| 11:13AM | 12 | described as the Miske Enterprise? |
| 11:14AM | 13 | THE DEFENDANT:  Yes, Your Honor. |
| 11:14AM | 14 | THE COURT:  And that enterprise consisted of a number |
| 11:14AM | 15 | of individuals to include Mr. Wayne Miller, Mr. Lance Bermudez, |
| 11:14AM | 16 | and the other individuals described in paragraph 8? |
| 11:14AM | 17 | THE DEFENDANT:  Your Honor, yes.  I was only |
| 11:14AM | 18 | introduced through Wayne Miller who was my cousin.  I was not |
| 11:14AM | 19 | aware until this indictment who actually was involved in the |
| 11:14AM | 20 | enterprise, Your Honor. |
| 11:14AM | 21 | THE COURT:  Okay.  The events though that you were |
| 11:14AM | 22 | engaged in specifically included these individuals though that |
| 11:14AM | 23 | Mr. Inciong mentioned, correct? |
| 11:14AM | 24 | THE DEFENDANT:  Yes, Your Honor. |
| 11:14AM | 25 | THE COURT:  And the Miske Enterprise operated during |

| | | |
|---|---|---|
| 11:14AM | 1 | the time frame that you indicated at least 2016 -- |
| 11:14AM | 2 | (Audio interruption.) |
| 11:14AM | 3 | Can you still hear me? |
| 11:15AM | 4 | THE DEFENDANT:  I hear you, yes, Your Honor.  Correct. |
| 11:15AM | 5 | THE COURT:  And that enterprise operated under the |
| 11:15AM | 6 | principal control, direction, and protection of Mr. Miske, Jr.? |
| 11:15AM | 7 | THE DEFENDANT:  Yes, Your Honor. |
| 11:15AM | 8 | THE COURT:  His first name being Michael, correct? |
| 11:15AM | 9 | THE DEFENDANT:  Correct. |
| 11:15AM | 10 | THE COURT:  And as part of this enterprise, is it fair |
| 11:15AM | 11 | to say, Mr. Akau, that you had an agreement with others to |
| 11:15AM | 12 | violate the racketeering laws of the United States including |
| 11:15AM | 13 | through the manners and ways in which the government described, |
| 11:15AM | 14 | those being attempted murder, murder for hire, drug trafficking |
| 11:15AM | 15 | and robbery? |
| 11:15AM | 16 | THE DEFENDANT:  Yes, Your Honor. |
| 11:15AM | 17 | THE COURT:  And some of those events also included the |
| 11:15AM | 18 | employment and use of firearms? |
| 11:15AM | 19 | THE DEFENDANT:  Yes, Your Honor. |
| 11:15AM | 20 | THE COURT:  The point of that, Mr. Akau, was to -- I |
| 11:15AM | 21 | assume it was in part to achieve financial gain? |
| 11:15AM | 22 | THE DEFENDANT:  It was for financial gain, Your Honor. |
| 11:15AM | 23 | THE COURT:  Were there other goals beside financial |
| 11:16AM | 24 | gain that you are aware of? |
| 11:16AM | 25 | THE DEFENDANT:  For my part, Your Honor, no.  That's |

11:16AM   1   what it was -- financial gain.

11:16AM   2           THE COURT:  And through these acts that you engaged

11:16AM   3   in, you and others, those affected interstate and foreign

11:16AM   4   commerce the way Mr. Inciong indicated; is that true?  For

11:16AM   5   example, the drugs that you stole in this incident that

11:16AM   6   Mr. Inciong describes from the 2018 time frame, those drugs

11:16AM   7   were drugs that were sourced from states and locations other

11:16AM   8   than Hawaii; is that fair?

11:16AM   9           THE DEFENDANT:  That's fair, Your Honor, to assume

11:16AM   10   that, yes.

11:16AM   11           THE COURT:  I think that was -- maybe I misstated it,

11:16AM   12   I said 2018 and it looks like it was maybe 2016, that time

11:16AM   13   frame.

11:16AM   14           THE DEFENDANT:  Yes, Your Honor.

11:17AM   15           THE COURT:  And similarly the firearms that were

11:17AM   16   employed in the ways that Mr. Inciong described were

11:17AM   17   manufactured outside of the State of Hawaii?

11:17AM   18           THE DEFENDANT:  Yes, Your Honor, it was.

11:17AM   19           THE COURT:  Thank you.  One of the examples of the

11:17AM   20   activities that you engaged in with others, as part of this

11:17AM   21   Miske Enterprise, occurred in 2016, 2017 when you worked with

11:17AM   22   Mr. Miller?

11:17AM   23           THE DEFENDANT:  Yes, Your Honor.

11:17AM   24           THE COURT:  Can you tell me a little bit about that

11:17AM   25   incident -- a little bit more about that incident?

| | | |
|---|---|---|
| 11:17AM | 1 | THE DEFENDANT: The one with Miller was -- I think it |
| 11:17AM | 2 | was for the union rep; is that what we are speaking of? |
| 11:17AM | 3 | THE COURT: This is the person that the government |
| 11:17AM | 4 | described as Victim-12. |
| 11:17AM | 5 | THE DEFENDANT: Yes, Your Honor. That was with -- he |
| 11:18AM | 6 | asked me if I could help him. He had a situation in which he |
| 11:18AM | 7 | fell out of favor with Mr. Miske, and he asked if I could help |
| 11:18AM | 8 | him by taking care of that situation for him in which they talk |
| 11:18AM | 9 | about Victim-12, Your Honor. |
| 11:18AM | 10 | THE COURT: And this was a way for Mr. Miller to get |
| 11:18AM | 11 | back in good graces with Mr. Miske? |
| 11:18AM | 12 | THE DEFENDANT: Yes, Your Honor. |
| 11:18AM | 13 | THE COURT: You were promised $50,000 for your |
| 11:18AM | 14 | assistance? |
| 11:18AM | 15 | THE DEFENDANT: I was, Your Honor. |
| 11:18AM | 16 | THE COURT: What was your understanding as far as |
| 11:18AM | 17 | where that 50,000 was going to come from? |
| 11:18AM | 18 | THE DEFENDANT: I assumed that my cousin was going to |
| 11:18AM | 19 | get it from Mike, but I wasn't sure if that was actually the |
| 11:18AM | 20 | truth. |
| 11:18AM | 21 | THE COURT: That's what Mr. Miller told you? |
| 11:18AM | 22 | THE DEFENDANT: Yes, Your Honor, that's what |
| 11:18AM | 23 | Mr. Miller told me. |
| 11:18AM | 24 | THE COURT: That Mr. Miske would be paying the $50,000 |
| 11:19AM | 25 | to you for your help? |

| | | |
|---|---|---|
| 11:19AM | 1 | THE DEFENDANT:  Yes, Your Honor. |
| 11:19AM | 2 | THE COURT:  And what did you do then to assist |
| 11:19AM | 3 | Mr. Miller? |
| 11:19AM | 4 | THE DEFENDANT:  We followed Victim-12 to a plate lunch |
| 11:19AM | 5 | place that's located in the Sand Island district, and once we |
| 11:19AM | 6 | were there he wanted me to shoot that Victim-12 once he came |
| 11:19AM | 7 | out of the restaurant.  And when Victim-12 came out of the |
| 11:19AM | 8 | restaurant -- excuse me, sorry. |
| 11:19AM | 9 | THE COURT:  No, go ahead. |
| 11:19AM | 10 | THE DEFENDANT:  When Victim-12 came out of the |
| 11:19AM | 11 | restaurant, he told me to stand down because he couldn't pull |
| 11:19AM | 12 | the tracking device that he placed on the vehicle off of the |
| 11:19AM | 13 | vehicle; so that never happened, Your Honor. |
| 11:19AM | 14 | THE COURT:  You were prepared to fire, you had a |
| 11:19AM | 15 | weapon to do that? |
| 11:19AM | 16 | THE DEFENDANT:  Yes, Your Honor, I did. |
| 11:19AM | 17 | THE COURT:  Had you brandished that weapon?  Had you |
| 11:20AM | 18 | drawn it out of wherever you had it? |
| 11:20AM | 19 | THE DEFENDANT:  No, I did not.  It was in the |
| 11:20AM | 20 | backpack. |
| 11:20AM | 21 | THE COURT:  All right.  And did you have an |
| 11:20AM | 22 | understanding as to why that victim was to be killed? |
| 11:20AM | 23 | THE DEFENDANT:  Yes, Your Honor.  I was told that he |
| 11:20AM | 24 | would be removed from the position of hiring for the jobs on |
| 11:20AM | 25 | the docks. |

11:20AM   1              THE COURT:  Because he had a role in hiring?

11:20AM   2              THE DEFENDANT:  They wanted to put the previous union

11:20AM   3   official that was currently in that position that was removed

11:20AM   4   from the position, they were going to put him back into that

11:20AM   5   seat.

11:20AM   6              THE COURT:  Because what?  Because that would help

11:20AM   7   Mr. Miske's business?

11:20AM   8              THE DEFENDANT:  That would help the flow of jobs onto

11:20AM   9   the docks.

11:21AM  10              THE COURT:  And another example I gather is this

11:21AM  11   $50,000 -- another $50,000 that you were offered to assist with

11:21AM  12   the kidnapping of Jonathan Fraser?

11:21AM  13              THE DEFENDANT:  Yes, Your Honor.

11:21AM  14              THE COURT:  Did that offer come to you from Mr. Miller

11:21AM  15   as well?

11:21AM  16              THE DEFENDANT:  Yes, it did, Your Honor.  Actually

11:21AM  17   that offer came before Victim-12's offer, Your Honor.

11:21AM  18              THE COURT:  And in that situation your understanding

11:21AM  19   from Mr. Miller was that the $50,000 would come from Mr. Miske?

11:21AM  20              THE DEFENDANT:  Yes, Your Honor.

11:21AM  21              THE COURT:  And your role would have been to -- I'm

11:21AM  22   sorry what?

11:21AM  23              THE DEFENDANT:  My role was to pick up -- the guy was

11:21AM  24   going to get dropped off by Wayne Miller, and I would drive him

11:21AM  25   to the north shore in which someone else would take care of the

| | | |
|---|---|---|
| 11:21AM | 1 | kid, and I refused.  And because I refused he said, For the |
| 11:22AM | 2 | same money, could you help me out with Victim-12?  That's how |
| 11:22AM | 3 | Victim-12 came into play for me, Your Honor. |
| 11:22AM | 4 | THE COURT:  Okay, I get it now.  And the person that |
| 11:22AM | 5 | you were supposed to drive to the north shore at Mr. Miller's |
| 11:22AM | 6 | request, that was Jonathan Fraser? |
| 11:22AM | 7 | THE DEFENDANT:  Yes, Your Honor. |
| 11:22AM | 8 | THE COURT:  And he is the person that you referred to |
| 11:22AM | 9 | as a kid? |
| 11:22AM | 10 | THE DEFENDANT:  Yes, Your Honor. |
| 11:22AM | 11 | THE COURT:  And lastly in 2016 you ended up assisting |
| 11:22AM | 12 | others with the robbery of a person who you knew was a drug |
| 11:22AM | 13 | dealer here in Honolulu; is that fair? |
| 11:22AM | 14 | THE DEFENDANT:  Yes, Your Honor, that is correct. |
| 11:22AM | 15 | THE COURT:  To do so you, impersonated a police |
| 11:23AM | 16 | officer with respect to Victim-4? |
| 11:23AM | 17 | THE DEFENDANT:  Yeah, I wore a prop badge, got out of |
| 11:23AM | 18 | the vehicle, and proceeded to rob Victim-4. |
| 11:23AM | 19 | THE COURT:  And you were armed at the time with |
| 11:23AM | 20 | firearms? |
| 11:23AM | 21 | THE DEFENDANT:  I had a gun in the backpack that |
| 11:23AM | 22 | remained in the car.  I had no firearm when I got out of the |
| 11:23AM | 23 | car. |
| 11:23AM | 24 | THE COURT:  And you ended up robbing Victim-4 of |
| 11:23AM | 25 | several pounds of methamphetamine? |

11:23AM   1        THE DEFENDANT:  That is correct, Your Honor.

11:23AM   2        THE COURT:  And you shared that methamphetamine with

11:23AM   3   the others who were with you during that encounter, and those

11:23AM   4   people included Mr. Bermudez; Ms. Akau, Ashlin Akau; and

11:23AM   5   Mr. Smith?

11:23AM   6        THE DEFENDANT:  And there is a person that's not

11:23AM   7   mentioned in any of the paperwork that I gave the Walmart bag

11:24AM   8   to who lured me to this scheme of robbery, Your Honor.

11:24AM   9        THE COURT:  So there were others that shared in the

11:24AM  10   methamphetamine that you stole from that drug dealer?

11:24AM  11        THE DEFENDANT:  Yes, Your Honor.

11:24AM  12        THE COURT:  The plea agreement mentions Mr. Bermudez,

11:24AM  13   Mr. Smith, Ms. Akau, Mr. Kauhi and Mr. Stancil, those were

11:24AM  14   among those that you included in this sharing?

11:24AM  15        THE DEFENDANT:  Yeah, I would assume that's correct,

11:24AM  16   Your Honor.

11:24AM  17        THE COURT:  And there were others?

11:24AM  18        THE DEFENDANT:  Yes, Your Honor, that's what I'm

11:24AM  19   saying.

11:24AM  20        THE COURT:  All right.  Are both counsel then

11:24AM  21   satisfied that a factual basis for Mr. Akau's plea of guilty to

11:24AM  22   Count 1 has been established?

11:24AM  23        MR. INCIONG:  Yes, the government is satisfied, Your

11:24AM  24   Honor.  Thank you.

11:24AM  25        MR. RICHARDS:  Yes, Your Honor, I believe the factual

| | | |
|---|---|---|
| 11:25AM | 1 | basis has been established for the allegations in the |
| 11:25AM | 2 | indictment and also the additional self-disclosed facts |
| 11:25AM | 3 | pursuant to his obligation to answer government questions |
| 11:25AM | 4 | truthfully in a proffer session. |
| 11:25AM | 5 | THE COURT:  With that then, Mr. Akau, I'll turn to |
| 11:25AM | 6 | you, sir.  As to Count 1 of the superseding indictment, how do |
| 11:25AM | 7 | you plead:  guilty or not guilty? |
| 11:25AM | 8 | THE DEFENDANT:  I plead guilty, Your Honor. |
| 11:25AM | 9 | THE COURT:  The Court finds that Mr. Akau understands |
| 11:25AM | 10 | the nature of this morning's proceedings and is competent to |
| 11:25AM | 11 | enter a knowing and informed plea.  The Court further finds |
| 11:25AM | 12 | that he has in fact entered a knowing, informed, and voluntary |
| 11:25AM | 13 | plea of guilty to Count 1 of the superseding indictment, and he |
| 11:25AM | 14 | has done so without coercion, force or threat. |
| 11:25AM | 15 | The Court finds that Mr. Akau's plea of guilty is |
| 11:25AM | 16 | supported by an independent basis in fact containing each of |
| 11:25AM | 17 | the essential elements of Count 1 and that Mr. Akau understands |
| 11:25AM | 18 | both the trial and civil rights that he would have in the |
| 11:25AM | 19 | absence of pleading guilty, but he nonetheless knowingly and |
| 11:25AM | 20 | voluntarily elects to waive those rights. |
| 11:26AM | 21 | The Court finally finds that in pleading guilty, |
| 11:26AM | 22 | Mr. Akau understands the factors that the Court will consider |
| 11:26AM | 23 | at the time of sentencing, including the potential penalties |
| 11:26AM | 24 | that are applicable to a violation of Count 1. |
| 11:26AM | 25 | Mr. Akau, as you've acknowledged that you are in fact |

| | | |
|---|---|---|
| 11:26AM | 1 | guilty, I accept your guilty plea and adjudge you guilty as |
| 11:26AM | 2 | charged to Count 1 of the superseding indictment.  The Court |
| 11:26AM | 3 | orders the plea agreement in this matter to be filed, but |
| 11:26AM | 4 | reserves a determination of whether to accept it until after a |
| 11:26AM | 5 | presentence investigation and investigation report have both |
| 11:26AM | 6 | been completed. |
| 11:26AM | 7 | May we get a sentencing date please? |
| 11:26AM | 8 | THE CLERK:  January 19, 2022 at 9:00. |
| 11:26AM | 9 | THE COURT:  Is that date and time acceptable with |
| 11:26AM | 10 | counsel? |
| 11:26AM | 11 | MR. INCIONG:  Yes, that's fine with the government. |
| 11:26AM | 12 | Thank you. |
| 11:26AM | 13 | MR. RICHARDS:  Your Honor, quick question.  When the |
| 11:26AM | 14 | Court -- is it standard practice for the Court -- (Inaudible |
| 11:26AM | 15 | due to background noise) |
| 11:26AM | 16 | THE COURT:  I can't hear you, Mr. Richards.  Standard |
| 11:27AM | 17 | practice for what? |
| 11:27AM | 18 | MR. RICHARDS:  For the Court to withhold the |
| 11:27AM | 19 | acceptance of the plea pending review of the PSR? |
| 11:27AM | 20 | THE COURT:  It is standard practice to determine |
| 11:27AM | 21 | whether or not to accept the plea agreement until sentencing. |
| 11:27AM | 22 | MR. RICHARDS:  Okay.  Not every practice is the same |
| 11:27AM | 23 | in every district; that's why I was asking. |
| 11:27AM | 24 | THE COURT:  Yes, that's not unusual at all. |
| 11:27AM | 25 | MR. RICHARDS:  Okay, good.  I just want to make sure |

11:27AM   1    there was nothing about the plea that was unusual.

11:27AM   2            One last procedural question on the statements that

11:27AM   3    are not going to be considered.  Does the Court flag those

11:27AM   4    through the PSR or is that something that it expects counsel to

11:27AM   5    do?

11:27AM   6            THE COURT:  That is something that counsel can

11:27AM   7    collaborate with the probation department, and I'm sure

11:27AM   8    Mr. Inciong would naturally do that, given the agreement that

11:27AM   9    you all have reached.  Or, independently Mr. Richards you'll

11:28AM   10   have an opportunity I'm sure to do that as probation will

11:28AM   11   undoubtedly want to talk with your client.  And during those

11:28AM   12   discussions you can certainly mention it to them if they are

11:28AM   13   not aware of it by that time.

11:28AM   14           MR. RICHARDS:  Okay, and the last question, Your

11:28AM   15   Honor, is:  Is the Court aware that my client is in custody,

11:28AM   16   and if the plea agreement is going to be -- if you're going to

11:28AM   17   hold the consideration of the plea agreement, does the Court

11:28AM   18   find it necessary to file it on the public docket, these plea

11:28AM   19   agreements could be used offensively against people, and the

11:28AM   20   Court spent a lot of time going into allegations in the plea

11:28AM   21   agreement, and I know that typically they are not filed under

11:28AM   22   seal in your district.  But would the Court consider

11:28AM   23   withholding the filing of the plea agreement until the Court is

11:28AM   24   going to accept it, so my client's safety and security cannot

11:28AM   25   be interfered with or harassed?

11:28AM   1          THE COURT:  Mr. Inciong, does the government have any

11:28AM   2   position on filing the plea agreement under seal or not filing

11:29AM   3   it at all until we gather again for sentencing?

11:29AM   4          MR. INCIONG:  We don't have an objection to either of

11:29AM   5   those things, Your Honor.

11:29AM   6          THE COURT:  All right.  So at your request, and

11:29AM   7   without objection -- at the defense's request and without

11:29AM   8   objection from the government, the Court will file the plea

11:29AM   9   agreement but do so under seal.  Would that be acceptable?

11:29AM   10          Mr. Richards, would that accomplish your goal?

11:29AM   11          MR. RICHARDS:  It would, Your Honor.  And then if it's

11:29AM   12   ever shared with any counsel for any other defendant that they

11:29AM   13   be given instructions that it's under attorney eyes only, not

11:29AM   14   to send it to the jail like the other discovery that we have

11:29AM   15   had in this case.

11:29AM   16          THE COURT:  All right.  Well, that certainly would not

11:29AM   17   come from me; but in terms of sharing, if the government wishes

11:29AM   18   to do that, then I'm sure they would not do so with the seal in

11:29AM   19   place but would ask for it to be unsealed for a limited

11:29AM   20   purpose, if they were inclined to or if they were to seek that.

11:30AM   21   So we will go ahead and file that under seal for now.  It's

11:30AM   22   always subject to unsealing obviously in part or in whole.  So

11:30AM   23   we will have to revisit that down the road when we either get

11:30AM   24   to sentencing or at sentencing.

11:30AM   25          But, Mr. Richards, you did not respond to my question

| | | |
|---|---|---|
| 11:30AM | 1 | about whether that date and time for sentencing is acceptable |
| 11:30AM | 2 | to you. |
| 11:30AM | 3 | MR. RICHARDS:  Yes, Your Honor.  If for some reason |
| 11:30AM | 4 | I'm engaged in something, is the Court rigid on moving dates or |
| 11:30AM | 5 | is that a drop-dead date? |
| 11:30AM | 6 | THE COURT:  No, not at all.  We move sentencing dates |
| 11:30AM | 7 | all the time.  And there may be reason obviously in this case |
| 11:30AM | 8 | to move it off January 19th or really any date that we pick. |
| 11:30AM | 9 | There is no magic to that date.  It's further out enough beyond |
| 11:30AM | 10 | the current trial date that we thought it would be appropriate. |
| 11:30AM | 11 | But we recognize entirely that this may not be the only -- |
| 11:30AM | 12 | there may not be just one continuance of that sentencing.  We |
| 11:31AM | 13 | may be looking at multiple continuances in light of the other |
| 11:31AM | 14 | defendants that remain. |
| 11:31AM | 15 | MR. RICHARDS:  That date is fine for now, Your Honor. |
| 11:31AM | 16 | Thank you. |
| 11:31AM | 17 | THE COURT:  That's all we can hope for for at least |
| 11:31AM | 18 | for right now. |
| 11:31AM | 19 | Anything else that I can assist the parties with?  I'm |
| 11:31AM | 20 | sure Judge Otake is chomping at the bit to get on to her video |
| 11:31AM | 21 | line that we have now taken 30 minutes of. |
| 11:31AM | 22 | MR. INCIONG:  Nothing from the government.  Thank you, |
| 11:31AM | 23 | Your Honor. |
| 11:31AM | 24 | MR. RICHARDS:  No.  Thank you, Your Honor. |
| 11:31AM | 25 | THE COURT:  Thank you both.  Mr. Akau, thank you as |

11:31AM   1   well.  We'll hopefully get together in person for sentencing,

11:31AM   2   whether that's January or some future time.  Thank you all.  We

11:31AM   3   are in recess.

11:31AM   4              (Proceedings were concluded at 11:31 a.m.)

          5

          6

          7

          8

          9

         10

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

```
 1                    COURT REPORTER'S CERTIFICATE

 2          I, Gloria T. Bediamol, Official Court Reporter, United

 3    States District Court, District of Hawaii, do hereby certify

 4    that pursuant to 28 U.S.C. §753 the foregoing is a complete,

 5    true, and correct transcript from the stenographically reported

 6    proceedings held in the above-entitled matter and that the

 7    transcript page format is in conformance with the regulations

 8    of the Judicial Conference of the United States.

 9

10          DATED at Honolulu, Hawaii, July 22, 2022.

11

12

13                               /s/ Gloria T. Bediamol

14                               GLORIA T. BEDIAMOL.

15                               RMR, CRR, FCRR

16

17

18

19

20

21

22

23

24

25
```